R. E. SMITH V. HONORABLE REUBEN *A.* HALL ET AL.

No. A-2053. Decided March 23, 1949.
Rehearing overruled April 20, 1949.
(219 S. W., 2d Series, 441.)

*Long & Strong* and *Neal Powers, Jr.,* all of Carthage, and *Bryan, Suhr & Bering,* and *E. H. Suhr,* all of Houston, for relator.

*Sellers & Fanning,* of Sulphur Springs, for respondents.

MR. JUSTICE HART delivered the opinion of the Court.

Panola County Royalty Owners Association, a corporation, and numerous individual royalty owners brought this suit in Panola County against R. E. Smith, a resident of Harris County. The corporate plaintiff was alleged to be a nonprofit organization designed to represent and promote the interests of landowners and royalty owners in their dealings with producers of oil and gas in Panola County. The individual plaintiffs were alleged to be the owners of royalty and similar interests in approximately 2,710 acres of land in the Carthage Gas Field in Panola County, all of which was under lease to the defendant, R. E. Smith. This acreage has been pooled and unitized into four units, under agreements between Panola County Royalty Owners Association, acting for the individual plaintiffs, and R. E. Smith.

The plaintiffs alleged that prior to February 15, 1946, a dispute arose between the parties "with respect to their royalty rights and interests and the basis of computation, payment and settlement therefor" under existing leases and agreements. On February 15, 1946, a letter was addressed to R. E. Smith by the Association's attorney urging the importance "to the operators, as well as to the royalty owners that the basis of royalty payments be as standard and uniform as possible" and suggest-

ing the modification of existing contracts so as to conform to agreements between royalty owners and other producers, including the Chicago Corporation. Forms of gas pooling agreements between the Chicago Corporation and its lessors were attached to the letter. On April 13, 1946, R. E. Smith replied, offering several propositions, including the following:

"If the above proposition is not acceptable to the royalty owners, then in lieu thereof, I will agree to enter into a contract with the royalty owners under my four units in the Carthage Field identical in its terms and for the same period of time, as the contract which was entered into by the Chicago Corporation with the royalty owners under land in such Field on which the Chicago Corporation owns leases and on which it has drilled wells, and from which it is producing gas."

On April 30, 1946, the Association replied by letter accepting the proposition we have quoted.

The plaintiff alleged that they have made demands upon the defendant to execute and deliver the contract in accordance with his agreement, but that he has failed and refused to do so; that the value of the plaintiffs' interests have been and will be impaired until the defendant performs his contract; that the actual difference in money between the sums paid by the defendant to the plaintiffs and the sums he should have paid if he had performed his agreement is unknown to the plaintiffs but it is a sum in excess of $5,000.00; that the market value of plaintiffs' interests at the time of the filing of the suit was $100.00 per mineral acre, but that it would be $150.00 per mineral acre if the defendant performed his contract, and that plaintiffs will be damaged in an aggregate amount of not less than $50,000.00 unless the defendant should be required to perform his contract.

In their petition the plaintiffs prayed that "an order be entered requiring defendant to specifically perform the contact and agreement hereinabove alleged and for an accounting and to do and perform all acts and things reasonably necessary and incident thereto, and for judgment for damages as above alleged, for costs of suit" and for general relief.

The defendant filed his plea of privilege to be sued in Harris County, where he resides, and the plaintiffs filed a contorverting plea in which they asserted that venue lay in Panola County under the provisions of Section 14 and 5 of Article

1995, Vernon's Texas Civil Statutes. The court overruled the plea of privilege, and its judgment was affirmed by the Court of Civil Appeals, which held that this case comes within the provisions of Section 14 of Article 1995. 215 S. W. (2d) 199. That court having overruled motions for rehearing and to certify questions to this court, relator here seeks a writ of mandamus to compel certification of the following questions:

"Question No. 1. Is the primary cause of action alleged in Appellees' petition one for specific permormance?

"Question No. 2. Are the general allegations in Appellees' petition for accounting for gas produced and for damages because of alleged diminution in value of royalties only incident to the request for specific performance?

"Question No. 3. Is Article 1995, Sec. 14, R. C. S. of Texas, applicable to the nature of the cause of action stated in Appellees' petition?"

Having granted the motion for leave to file the petition, under Rule 475, Texas Rules of Civil Procedure, on the ground of alleged conflict of decisions, we have concluded that a conflict exists and that on the merits the Court of Civil Appeals erred in affirming the judgment of the trial court.

Section 14 of Article 1995 reads as follows:

"14. Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

The primary cause of action alleged in the plaintiffs' petition is for specific performance. The purpose of the suit is to compel the defendant to carry out his agreement by executing and delivering contracts similar to the contracts of the Chicago Corporation. Damages are sought on the basis of the difference between the royalties actually paid and the amount which defendant should have paid if he had executed the desired contracts, but these damages, although substantial in amount, are identical to the plaintiffs' alleged right to compel performance. In this connection, an accounting is prayed for merely for the purpose of ascertaining the exact amount that the defendant owes. The further allegation of damages on the basis of the difference in market value between the plaintiffs' interests under existing contracts and as they would be under

the desired contract seems to be primarily an allegation to show an additional reason for requiring specific performance; at most, this allegation can be considered as pleading an alternative cause of action for damages for breach of contract in the event that the remedy of specific performance should be denied.

■ We assume without deciding that the alleged agreement of the defendant to make a new contract providing for a different method of calculating the sums due in payment of royalties is a contract to convey an interest in land. Even if this assumption is made, we think that the present case does not come under the provisions of Section 14 of Article 1995. The decisions of this court for many years have been uniformly to the effect that a suit for specific performance of a contract to convey an interest in land, or for damages for breach of such contract, does not come under the provisions of the venue statutes relating to suits for the recovery of lands or damages thereto. Hearst v. Kuykendall, 16 Texas 327; Miller v. Rusk, 17 Texas 170; Cavin v. Hill, 83 Texas 73, 18 S. W. 323. In Miller v. Rusk, supra, the court said (17 Tex. at p. 172):

"Where the suit is upon the contract, whether it be to compel the specific performance of it, or to recover damages for its breach, it is not a suit for the 'recovery of land or damages thereto,' and consequently is not within the exception and rule of Statute, which requires the suit to be brought in the county where the land lies, though it be not the county of the defendant's residence."

These decisions have been followed by the courts of civil appeals in the following cases: Lucas v. Patton, 49 Texas Civ. App. 62, 107 S. W. 1143; Burkitt v. Wynne, 62 Texas Civ. App. 560, 132 S. W. 816 (writ of error refused); Garrison v. Stokes, 151 S. W. 898; Ballard v. Ellerd, 199 S. W. 305 (writ of error refused); Texas Farm Mortgage Co. v. Starkey, 25 S. W. (2d) 229.

The cases cited by the respondents are distinguishable from the present case. In Humble Oil & Refining Co. v. Monroe, Tex. Civ. App., 129 S. W. (2d) 454, the suit was to recover an oil payment, which is held to be an interest in land. Tennant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53. Budde v. Navarro Oil Co., Tex. Civ. App., 125 S. W. (2d) 1055, was a suit to recover a royalty interest which the plaintiff claimed to own under an existing lease. Elder v. Miller, Tex. Civ. App., 116

S. W. (2d) 1171, was a suit for the value of oil which the plaintiff claimed to have been wrongfully extracted from his land, and was held to be a suit for damages to land. Shell Petroleum Corporation v. Grays, 122 Texas 491, 62 S. W. (2d) 113, was a suit to recover title to an undivided interest in a tract of land and for an accounting for oil removed therefrom. In none of these cases was suit brought for the primary purpose of securing specific performance of an executory contract.

■ Although the question was not decided by the Court of Civil Appeals, we have authority to decide whether the venue can be maintained in Panola County under the provisions of Section 5 of Article 1995. Saigh v. Monteith, 147 Texas 341, 215 S. W. (2d) 610. The contracts sued on in this case do not contain an express agreement to perform an obligation in Panola County, and therefore venue cannot be maintained there under Section 5. Saigh v. Monteith, supra.

We assume that the Court of Civil Appeals will conform its ruling and decision to those of this court; otherwise, the appropriate writ will issue under Rule 475, Texas Rules of Civil Procedure.

Opinion delivered March 23, 1949.

Associate Justice Harvey not sitting.

Mr. Justice Smedley dissenting.

Because the Court is wholly without jurisdiction of the question as to venue under Section 5 of Article 1995, I dissent from that part of the foregoing opinion which takes jurisdiction of and decides that question. See dissent in Saigh v. Monteith, 147 Texas 341, 215 S. W. (2d) 613.

Opinion delivered March 23, 1949.

Rehearing overruled April 20, 1949.