### COPELAND v. BENNETT.

No. 4707.

Court of Civil Appeals of Texas.
El Paso.

March 21, 1951.

Rehearing Denied June 14, 1951.

Appellee L. M. Bennett was plaintiff and appellant Joe W. Copeland was defendant in the trial court, and the parties will be referred to here as there. The suit was for specific performance of the sales provision of a contract to convey certain lands and grazing leases. The defendant by a cross-action sought a partition of the property and an equitable accounting. The trial court granted plaintiff specific performance of the contract and fixed a time for performance thereof, and defendant perfected his appeal.

The nature of the case is fully stated in the opinion of the Supreme Court, to which we refer without making any further statement. The opinion and mandate of the Supreme Court finally disposed of the first and second points presented by appellant in his brief, and remanded the case to this court to pass on ten other points raised by appellant which this court had, not decided. We shall consider these points in the order in which they are presented by appellant in his brief.

The third point is that the court erred in decreeing specific performance because the record expressly negatives performance by plaintiff, his readiness to perform and every legal substitute for performance or readiness to perform. The court peremptorily instructed the jury to find that defendant was in default under the contract on December 23, 1948. The suit was filed on December 24, 1948. The contract, paragraph 4, provides that the balance of the purchase money due thereunder should be paid in cash at Marfa, Texas, within sixty days after the date of default thereunder. In his second amended original petition plaintiff alleged that he had been at all times and that he was ready and willing to pay to defendant the net amount of the consideration due him for conveyance of the property, and that he tendered and offered to pay into the registry of the court said amount. In his trial amendment he again alleged that he had been at all times and was ready and willing to pay to defendant the net amount of the consideration for the conveyance of defendant's interest in the property as might be determined by the court upon defendant's conveyance thereof to him. Under

H. O. Metcalfe, Marfa, Bill Holland, San Angelo, Whitaker, Turpin, Kerr, Smith & Brooks, Midland, for appellant.

Fred O. Senter, Jr., Marfa, Runge & Hardeman, San Angelo, for appellee.

McGILL, Justice.

This is the second time this appeal has been before this court for consideration. Our former opinion is reported in 232 S.W. 2d 765, and the opinion of the Supreme Court in 235 S.W.2d 605.

this point appellant states that the record conclusively shows that plaintiff had not performed and that he was not ready to perform and could not perform his obligation to pay for the land under the terms of the contract and that he had refused to do so. His bill of exception No. 2, which was allowed by the court, is as follows:

"Be It Remembered that upon the trial of the above entitled and numbered cause and after the return by the jury of its verdict under the direction of the Court, and upon the announcement by the Court that a judgment would be entered granting specific performance against the defendant and in favor of plaintiff of the contract declared upon in plaintiff's original petition, but conditioned upon payment to defendant, Joe W. Copeland, of the sum of $15,859.53, all of which said events occurred on the 12th day of August, 1949, plaintiff, L. M. Bennett, did thereupon orally move the Court to allow him a period of nine months within which to make such payment to defendant, Joe W. Copeland; whereupon, defendant Joe W. Copeland objected and contended that such payment should be made immediately.

"Thereupon the Court ruled that the plaintiff, L. M. Bennett, would be allowed a period of six months within which to make such payment, to which said action of the Court the defendant in open court excepted."

In his brief appellee does not point out any part of the record which discloses any evidence showing or tending to show that he was ready, able and willing to pay anything for defendant's interest in the property at any time. He relies on the allegations of his pleading, citing Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141.

We do not understand Burford v. Pounders to hold that it is unnecessary for a vendee in the ordinary contract for the sale and purchase of real estate where prior to the time for performance. the vendor has repudiated the contract or indicated his intention not to comply with its terms, to prove that he (the vendee) was ready, able and willing to pay the purchase price in accordance with the terms of the contract when he seeks specific performance. What that case does hold is that where a lease gave the lessee the refusal to purchase the leased property at an agreed price in the event of sale during the term of the lease and during the term the lessor-owner sold the property to a third party, without notice to the lessee, and the trial court found that the lessee was not in position to have purchased the land at the time it was sold, but did not find and refused to find that the lessee did not have the money to purchase the land within a reasonable time after notice of the sale, it was not necessary for the lessee to make a tender but it was sufficient for him to offer to do equity in his pleadings. It is true that the opinion states this is the material consideration. The opinion shows that the lessee was able, ready and willing to perform within the term of the lease. The opinion quotes from 58 C.J., Specific Performance, Sec. 316, as the law applicable to that case: "On the contrary, the complainant ordinarily is entitled to specific performance where he alleges and *proves* that he is ready, able and willing to perform." From the same authority, a footnote (2-f) under Section 342: "In Texas an actual tender is not necessary where the purchaser pleads and *proves* a willingness to pay, but is entitled to relief provided that within a time fixed in the decree he shall pay the amount due" (emphasis ours); citing among other authorities Kalklosh v. Haney, 4 Tex.Civ.App. 118, 23 S.W. 420 and Lockwood v. Frost, Tex.Civ. App., 285 S.W. 874. Appellant cites and relies heavily on Oliver v. Corzelius, Tex. Civ.App., 215 S.W.2d 231 by this court, and Corzelius v. Oliver, 148 Tex. 76, 220 S.W. 2d 632, 634 (Sup.Ct.). In Oliver v. Corzelius an option to purchase real estate within a specified time was involved. This court held that in order to establish his right to specific performance it was incumbent upon the optionee to show that he was able, ready and willing to perform his obligation during the life of the option. The judgment of this court was reversed by the Supreme Court in that case on the ground that this court erred in holding that there was no evidence of the optionee's ability to pay.

Corzelius v. Oliver, supra. However, the Supreme Court expressly held that *"under all the circumstances presented by this record"* (emphasis ours) there was no error in the rulings of this court on the several contentions of the optionee, except this ruling, (220 S.W.2d loc. cit. 635, 1st column), and on this point said: "Notwithstanding Mrs. Oliver's refusal to keep her agreement it would appear but reasonable that Corzelius be required to show by competent evidence that he could have raised the money to pay her. Brown v. Binz, Tex.Civ.App., 50 S.W. 483; Terrell, Atkins & Harvin v. Proctor, Tex.Civ.App., 172 S.W. 996." 220 S.W.2d id. loc. cit. 635(3, 4). We think this language of the Supreme Court definitely indicates that this court was correct in its holding above referred to.

■ The only distinction between an option to purchase real estate and a contract of sale and purchase, insofar as the optionee's or purchaser's right to specific performance is involved, is the element of time and the fact that there is no contract of sale until the optionee elects to exercise his option to buy. Ordinarily time is of the essence of an option and is not of the essence of a contract to sell and purchase real estate. 43 Tex.Jur. p. 142, Sec. 88. Where time is not of the essence of the contract the purchaser has a reasonable time to perform. Id. p. 41–42, Sec. 87. The question is thus presented whether under the record in this case it was necessary for plaintiff in order to establish his right to specific performance to show that he was ready, able and willing to pay defendant what the court found was due him under the contract, within the sixty day period from the date of default, as specified by the contract, or within a reasonable time thereafter. Plaintiff alleged that defendant had defaulted under the contract, and defendant's general denial put this fact in issue. Also, the pleadings put in issue the amount, if any, that was due from defendant for a conveyance under the contract in case there had been a default by defendant. These issues were sharply controverted and it cannot plausibly be contended that they were not raised in good faith by both

parties. The date that defendant had defaulted was not determined until the court announced his judgment on August 12, 1949; the amount plaintiff owed defendant under paragraph 4 to entitle him to a conveyance of defendant's interest in the land was not determined until that date. Under the terms of paragraph 4 the contract to sell and purchase did not come into being unless and until there was a default by one of the parties. It would indeed be incongruous to hold that plaintiff was under any obligation to tender to defendant or to show his readiness, willingness or ability to pay him an amount due under a contract which defendant denied had come into existence, and if it did exist, the amount due thereunder was unknown, and there was a bona fide controversy between the parties as to both of these matters. Our conclusion is that after plaintiff filed his suit he was under no obligation to defendant under the contract until the court determined that there was a contract and fixed his obligations thereunder.

■ The fourth point complains of the court's action in allowing plaintiff until March 27, 1950, or any other period of time in which to perform by paying into the registry of the court the value of defendant's equity in the property as fixed by the decree. As pointed out in our former opinion, except for the unusual length of time allowed this is the customary provision in decrees ordering specific performance of contracts such as that here involved. 232 S.W.2d loc. cit. 768(1) and authorities there cited. See also 38 Tex.Jur. p. 797, Sec. 104. While we think, in view of the 60 day limit provided by the contract, that the length of time allowed for plaintiff to perform was rather long, yet under all the circumstances in this case we are not prepared to hold that the trial court abused his discretion in this respect. It must be remembered that until the court announced his judgment the exact date when defendant became in default and the amount he would be required to pay under the terms of the contract was unknown. The sum fixed by the court was considerable, and we cannot say that the time allowed to raise it was entirely unreasonable under the cir-

cumstances. Of course the date fixed by the decree for performance, March 27, 1950, has long since passed, and an affirmance of the judgment will require that this court specify a date for performance after its mandate is filed in the trial court. We think that 60 days from that date will be a reasonable time to allow for performance.

■ The fifth point is that the court erred in directing the jury to return a verdict that defendant was in default under the contract because there was evidence that defendant's default, if any, was induced by plaintiff's wrongful conduct. The conduct of plaintiff, summarized by appellant under this point in his brief, on which he relies as some evidence tending to show that he was not in default was: Plaintiff filed suit against defendant on June 20, 1947 seeking substantially the same relief he sought in this suit, and kept such suit on the docket of the District Court of Presidio County until January 26, 1948; plaintiff testified that defendant had tendered payment at least in part of his obligations under the contract and that plaintiff had refused to accept same. The record discloses that this occurred after the suit above referred to had been filed and while it was still pending; plaintiff pastured some of his own stock on the Adobe Ranch, which was included in the property owned or leased by plaintiff and defendant without having any lease thereon; plaintiff arbitrarily reduced the acreage and rental on the Squaw Springs Ranch which he had leased from the joint venture at 15¢ per acre without a survey of such ranch having been made, when the lease provided for an annual rental of 15¢ per acre on an assumed acreage of 35,000 acres and contemplated that a survey should be made and the acreage definitely determined before any reduction in such rental was authorized; plaintiff purchased for his own benefit certain State school land which was leased by plaintiff and defendant and declined to bid on such land for the joint enterprise. Appellant concedes in his brief that none of these acts or conduct by plaintiff was specifically covered by the contract. It is clear that the contract does not provide that such conduct by plaintiff or any part thereof should

excuse defendant from performance of his obligations thereunder. Appellant cites no authorities to sustain his position and we have found none. We have concluded that the point is without merit.

■ The sixth point is that the court erred in allowing plaintiff credit for alleged items of investment not authorized by the contract. These items are listed under this point: $3,535 attorneys fees paid to E. B. O'Quinn on May 26, 1947; $2,679.32 paid to Ray W. Willoughby on April 23, 1947, for one-half of the costs of a division fence built by him and $769.46 paid to Jim Cordér on October 6, 1947 for repair of a windmill and well situated on the property. Paragraph 12 of the contract provides: "No improvements are to be made on said properties or expenses of any kind incurred except by the joint written approval and consent of the parties hereto, and if so made without the written approval of both parties hereto, same shall be unlawful and neither the parties hereto nor said properties shall be liable for the payment therefor." The complaint is that these expenses were not authorized in writing by the parties. We are convinced that the evidence shows that the defendant either himself contracted for these expenses or authorized them, and waived the above provision of the contract as to that.

■ The seventh point complains of the court's method of fixing the damages or the price that plaintiff was required to pay defendant for the property because it eliminates from defendant's equity in his investment items of income derived from the joint venture which were in part reinevested in the joint venture and in part appropriated by plaintiff to his own use. Paragraph 8 of the contract provides: "It is agreed that all income derived from these Ranch properties are to be first applied to the repayment of the party who has advanced or paid an excess over and above his one-half of said indebtedness or improvements, costs, above recited, or whatever excess payment or payments he may have so made, and the balance of such income shall be held to pay or apply to or on the payment of said purchase money notes above mentioned, principal and interest,

and said grazing lease rentals, State interest, taxes, and cost of improvements then remaining unpaid. However, in the event such income funds then on hand shall be insufficient to pay all of such indebtedness then owing, due and matured, then said parties shall immediately pay same by immediately paying equal amounts thereof."

Paragraphs 4 and 11 of the contract are set out in our former opinion and it is unnecessary to copy them in full here. We do reproduce that portion of paragraph 4 which specifies the amount for which the defaulting party agrees to sell and the non-defaulting party agrees to buy and to pay to the defaulting party for his investment in the property. Under paragraph 4, in the event of his default, Copeland agrees to sell to Bennett "at and for the amount which I then actually have invested in cash in said ranch lands, and said properties and improvements", and Bennett is authorized to deduct from this amount: "whatever total amount I, the said Joe W. Copeland may then owe to said L. M. Bennett for moneys theretofore advanced by said L. M. Bennett to me, or for my account, for the purpose of paying my one-half or any part of my one-half of any principal or interest installments on said notes or any of them, or on my one-half of any State principal or interest indebtedness, or on my one-half of the grazing lease rentals, or on my one-half of the taxes, or on my one-half of the cost of any labor, materials and improvements, or on my one-half of the cost of any additional lands which may have been purchased or leased, by us, the balance of such purchase price to be so paid to me or my heirs, executors, administrators or legal representatives, * * *." The pertinent portion of paragraph 11 is: " 'the amount actually invested in such ranch properties' by either of said parties at any time in cash shall be determined by the figures shown and reflected by said books kept by said Hope."

The court allowed defendant credit to his investment on certain items he had paid for rental of county school land, University land and public school land, and for purchase of one section of land in his individual capacity. These items were not shown on the books of Hope. Of course appellant makes no complaint about credit of these items. The court also credited Bennett's investment account with $4,423.39 which he had paid for the purchase of public school land in his individual capacity and which was not shown by Hope's books. These lands had been leased by plaintiff and defendant as part of the joint enterprise. There is no complaint about credit of this item and we do not pass upon the propriety of its allowance. Appellant does list three items of income about which he complains: Pasturage paid June 12, 1947, $877.20; money paid by plaintiff for lease rental of the Squaw Springs Ranch on February 11, 1948, $2,088.50; and same paid September 8, 1948, $3,016.65. Appellant also contends that these two last items should have been $5,250 each because under the lease by the joint enterprise to plaintiff Bennett, Bennett was unauthorized to reduce the acreage without a survey, which was not made.

Viewing the contract in its entirety, and especially paragraphs 4, 8 and 11 thereof, we think it clear that the parties were not concerned about recovering any part of the income derived from the joint venture in the event either of them should default. Each was anxious to be reimbursed for the amount of cash he had actually contributed to the joint enterprise. The default specified was a failure to contribute the part each was obligated to pay for the purposes enumerated. The parties undoubtedly realized that the income derived from the properties would be insufficient for these purposes. Although under paragraph 8 income should be first applied to reimburse the party who had advanced more than his one-half required for such purposes, there is no specific provision that such income should be shown as cash invested by either party on the books of Hope, or treated as a part of either party's investment. Appellant's argument under this point is ingenious, but unsound. Whether these items of income should be considered in a determination of defendant's cross-action for a partition of the properties and an equitable accounting becomes immaterial on this appeal unless the case should be remanded for a new trial. Under the holding of the Supreme

Court the granting of specific performance of the contract impliedly denied defendant any relief on his cross-action. Obviously he could not recover anything on his cross-action if specific performance of the contract were decreed.

By the eighth point appellant asserts that the court erred in refusing certain special issues requested by defendant which would have submitted his theory that plaintiff appropriated the subject of the joint venture of the parties to his separate use, to the damage of the joint venture and the enhancement of plaintiff's equity therein. The contention is that plaintiff pastured certain cattle, sheep and horses belonging to him on the Adobe Ranch, which was a part of the property included in the joint venture, without having any lease on such ranch and that this ranch was thereby damaged and rendered less valuable for the purposes of the joint enterprise. The requested special issues which were refused inquired if plaintiff on or after June 1, 1947, appropriated and took possession of the Adobe Ranch by use of same for pasturage; during what period of time such appropriation and possession continued; and the value of the use of the ranch for such period for the purpose of pasturing livestock thereon. The plaintiff contends that the evidence as to these matters was so indefinite that it would have been impossible for the jury to answer these issues intelligently.

Under our ruling on appellant's seventh point it is unnecessary to decide this question. Any amount which plaintiff may have owed the joint enterprise for the unauthorized use of this ranch could be nothing but income, and under our ruling could not be properly considered in determining the amount owed to defendant for his investment in cash under the contract to entitle plaintiff to specific performance thereof; therefore unless the case is remanded for a new trial on defendant's cross-action these requested issues become immaterial.

The ninth point is that the court erred in declining to allow defendant legal interest on the value of his equity as fixed by the court from February 23, 1949, which was the last day of the sixty day period after default during which payment was required by the contract. In support of this point appellant cites Stevens v. Palmour, Tex.Civ.App., 269 S.W. 1057 and 38 Tex. Jur. p. 799, Sec. 105. An examination of these authorities discloses that in Stevens v. Palmour the purchaser had been in possession of the property which was the subject matter of the contract from the date thereof. Texas Jurisprudence reads: "A decree in favor of the purchaser of land should not be inequitable to the vendor *by permitting the purchaser to occupy the land* without paying interest on deferred payments of the purchase price or rents." (Emphasis ours.) Here it does not appear that the plaintiff has ever enjoyed the exclusive possession of the property. It would therefore be most unjust and inequitable to require him to pay interest from the date specified in the contract on which he was required to pay the purchase price when the property has not been conveyed to him and he has not had the exclusive possession thereof.

We shall not labor appellant's tenth point, which complains of the judgment because it taxes all costs against defendant, when at the same time it requires plaintiff to pay defendant a substantial sum of money as a condition to the relief of specific performance which he sought. Rule 131, Texas Rules of Civil Procedure applicable to district and county courts, provides: "The successful party to a suit shall recover of his adversary all costs incurred therein except where otherwise provided." That plaintiff was the successful party to the suit in the trial court is amply attested by defendant's vigorous appeal from the judgment there rendered. In any event, under the circumstances the matter of taxing costs under the Rule was within the sound discretion of the trial court.

Neither do we need to labor appellant's eleventh point, which complains of the form of the decree, because it is self-operative as a conveyance of defendant's interest in the land involved. This portion of the decree provides that should the plaintiff deliver the sum of $15,859.53 fixed by the judgment into the registry of the court within the time prescribed and the defend-

ant fail or refuse to deposit proper conveyance of the land with the clerk as ordered, then the decree should ipso facto operate as a sale and conveyance of all of defendant's interest in the land to the plaintiff. The complaint is that there is no pleading seeking such relief and that this provision vests title in plaintiff and clouds defendant's title to his interest in the property pending this appeal. This provision of the decree is patterned after the decree rendered in Hart v. Wilson, Tex.Civ.App., 281 S.W. 339 reversed on other grounds, Tex.Com.App., 288 S.W. 133. In neither opinion is this provision of the decree questioned. Also we judicially know that a similar provision was incorporated in the decree rendered in Oliver v. Corzelius, supra, and was not questioned in this court or in the Supreme Court. Such provision being conditional on payment of the purchase price, only does what the defendant was required to do by the judgment and could not possibly cloud his title to his interest in the property any more than it was already clouded by those portions of the decree which fixed the amount plaintiff should pay defendant for his interest in the property, and ordered him to execute and deliver to the clerk of the court proper conveyance thereof within the specified time.

 Appellant's twelfth and last point complains of that portion of the decree which requires him to convey to plaintiff seven saddle horses and three mules acquired by plaintiff and defendant from L. F. Burris and wife. The sales provision of the contract (paragraph 4) does not specifically refer to personal property. It does mention "lands, premises, properties and improvements, both fee simple title and leasehold title," conveyed by the deed from L. F. Burris and wife to plaintiff and defendant, which defendant agrees to sell to plaintiff, "as well as all of my individual interest to and in any of the other lands and improvements and *ranch* properties which the said Joe W. Copeland and L. M. Bennett may hereafter jointly purchase." (Emphasis ours.) Under the familiar doctrine of ejusdem generis we think the words "ranch properties" cannot be construed to mean personal property. However, if such construction is justified it is well settled that as a general rule contracts concerning personal property will not be specifically enforced. 38 Tex.Jur. p. 732, Sec. 56. There is no showing that the horses and mules involved were in any manner unique or that equivalent horses and mules could not be purchased on the open market. This portion of the decree is erroneous.

It follows from what we have said that it is our opinion and judgment that all of appellant's points except the twelfth point should be overruled; that the decree should be reformed so as to eliminate therefrom that portion thereof which requires the defendant, Joe W. Copeland, to convey to plaintiff L. M. Bennett seven saddle horses and three mules acquired by defendant and plaintiff from L. F. Burris and wife, and that the time for performance as specified in the decree be fixed at sixty days from the date that the mandate of this court is filed in the trial court, and that in all other respects the judgment of the trial court should be affirmed.

It is accordingly so ordered. Reformed and affirmed.

PRICE, Chief Justice (dissenting).

I regret that I cannot agree to the disposition made of this case. In my opinion the judgment of the trial court gave the appellee an option of something over six months to purchase this property. In order for the appellee to acquire title to this property he must comply with the conditions imposed by the judgment of the trial court. Bennett was specifically ordered to pay into the registry of the court by March 27, 1950, $15,859.53. When Bennett did this, under the decree he acquired title to the property. In my opinion he could not acquire title to the property save by paying into the registry of the court the amount decreed by the judgment. In my opinion Bennett by his failure to comply with the judgment lost all right to acquire this property, or in any event we should not give the appellee an additional option within which time he may or may not elect to acquire this proper-

ty. Appellee should not be allowed to benefit by a judgment with which he has failed to comply.

In my opinion the appeal by appellant on a cost bond did not relieve appellee from the condition placed on him by the judgment in order to acquire the title.