**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Don C. McDANIEL, Appellee.**

No. 6565.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 23, 1956.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Merchant & Fitzjarrald, Amarillo (Dean Dunlap, Amarillo, of counsel), for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment overruling appellant's plea of privilege to be sued in Dallas County, Texas, the place of its residence. This action arose out of a suit filed by appellee, Don C. McDaniel, against appellant, Texas Employers' Insurance Association, a corporation, to set aside a written compromise settlement agreement of a compensation claim. The venue issues were tried to a jury on May 23, 1955, and a judgment was rendered upon the jury verdict, together with at least one additional finding made by the trial court, from which judgment appellant perfected its appeal and presents six points of error.

The primary suit is founded on allegations of fraud. Appellee alleges in effect that he suffered an injury on or about May 20, 1953, while employed by A. J. Betty Construction Engineering Company, from which injury total and permanent incapacity has resulted; that following his injury appellant paid him $25 per week until November 27, 1953, on which date appellant, through its agents, servants and employees, falsely obtained appellee's signature upon a compromise settlement agreement for the sum of $150 in addition to former payments, which agreement was predicated upon the attending doctor's future report of appellee's physical condition and which agreement was thereafter approved by the State Industrial Accident Board.

Appellant filed its plea of privilege and in due course appellee filed his controverting affidavit and made all of his original petition a part thereof. Appellee sought to hold venue in Potter County, Texas, under the provisions of Exception 7 of Article 1995, Vernon's Ann.Civ.St., pertaining to fraud. Subject to its special exceptions, appellant joined issues with appellee on all material questions raised.

In support of his claims appellee offered in evidence a certified copy of the complete file of the Industrial Accident Board on this case, together with his own oral testimony, after which both parties rested. In his testimony appellee claimed that appellant's agent, "Mr. Hickman," made the false representations to him in Potter County, Texas. While such does not seem to be reflected by the pleadings, both appellee's oral testimony and the record evidence offered by him reveal that appellee executed a compromise settlement receipt in the presence of two witnesses at his own bank on December 11, 1953, the date he cashed his $150 draft given to him by appellant in the compromise settlement.

We shall discuss the points of error in the order that seems most logical to us. Appellant charges error because of the failure of the trial court's charge to

conform to the pleadings and because the jury findings are insufficient to sustain the trial court's judgment. Appellant preserved the record in support of its charges. The trial court submitted to the jury, over the objections of appellant, only two sets of questions. It first inquired if Mr. Hickman represented to appellee that the instrument signed on November 27, 1953, by appellee did not represent a final settlement of his claims. The jury answered affirmatively to the effect that Hickman did so represent to appellee. In answer to further inquiries made by the trial court in the same set of questions, the jury further found that Hickman's representations were false but believed and relied upon by appellee who would not have signed the instrument otherwise. In the other set of questions propounded to the jury, the trial court inquired if appellee knew at the time he cashed his $150 draft given to him by appellant that the same had been issued in final settlement of his claim and inquired further if a person of ordinary prudence, situated as appellee was, would have known such to have been so issued. The jury gave a negative answer to each of the inquiries.

As previously stated, appellee's allegations of false representations made to him by appellant's agent were predicated upon the report of appellee's attending doctor furnished and paid by appellant. In connection with this matter, appellee pleaded in part as follows:

"The plaintiff would further show that on said date of the 27th day of November, 1953, *that the agents, servants, and employees of the defendant,* having previously directed the plaintiff herein to be in the defendant's branch office in Amarillo, Potter County, Texas, and at their direction, the plaintiff was in the defendant's branch office, located in Amarillo, Potter County, Texas, *advised the plaintiff that the Association's doctor, that had been treating the plaintiff, had not yet made his report to them, but were expecting it in a short time.* That after making such statement to the plaintiff, the de-

fendant's agents, servants and employees prepared the compromise settlement agreement hereinbefore set out, in the sum of $150.00, and advised the plaintiff that they would pay him for six weeks in advance, said period to end on the 9th day of January, 1954, but that in order to receive said payment it would be necessary for him to sign the compromise settlement agreement handed him. *The agents, servants and employees of the defendant further advised and promised the plaintiff that by that date that they should have the doctor's report, and that in the event, that the doctor, that is, the Association's doctor, did, in his report advise the Association that the plaintiff had any permanent disability that at that time they would make him an additional payment upon the basis of the doctor's report. * * * and that upon the receipt of the doctor's orders that the Association would make him an additional settlement, * * * that after receiving the doctor's report from the Association doctor, the Association failed and refused to make any additional payment to the plaintiff herein. * * * the defendant had no intention of taking into consideration the doctor's report at anytime thereafter.*" (Emphasis added.)

It will be observed that according to appellee's pleadings the question of whether or not appellee should receive any additional payment over and above the $150 depended entirely on the nature of a medical report to be furnished to appellant by appellee's attending physician whose name, according to the record, was Dr. Huston Pearson. Appellee so testified upon cross examination as follows:

"Q. I am talking about your conversation with Mr. Hickman. In your conversation with Mr. Hickman did not this matter of whether you should receive more than a $150 turn on the final report that the doctor made? A. Yes, it did."

Dr. Pearson made such report to appellant on date November 30, 1953, by letter, the body of which is as follows:

"Dear Sir:

"I have been treating Mr. Don Mc-Daniels who was injured on May 20, 1953 while working for A. J. Betty, Contractor. He received a fracture of the right fibula in the region of the middle of the bone. There was no displacement of fragments and no excessive swelling. He was put in a plaster cast for two weeks and then a walker iron applied and he walked on this leg with only a moderate amount of swelling. The fracture was firmly healed by the eighth week at which time he was allowed to return to work. He was unable to work for he was having a large amount of swelling. He has continued to have swelling of the foot and lower right leg to date, although he is making improvement. He should continue to improve and by another six or eight weeks I believe there will be no or at the most a minimal amount of disability.
(Signed)

"Yours truly,
H. Pearson
Huston Pearson, M.D."

The said letter was written three days after the compromise settlement was signed. A copy of the letter was attached to the transcript that went to the State Industrial Accident Board and was there approved. The said letter was a part of the Board's transcript that was introduced at the trial by appellee. Appellee pleaded and proved that appellant had already paid him $25 per week from May 20, 1953, to November 25, 1953, a total of $675, for 27 weeks of disability in addition to the doctor bills paid by appellant, and was then being offered $150 more with prospects of still a later settlement if the doctor's medical report showed he "had any permanent disability." The report of the doctor did not show any prospects of permanent disability. On the contrary, the doctor said on November 30, 1953, "He

should continue to improve and by another six or eight weeks I believe there will be no or at the most a minimal amount of disability." Appellee himself made proof of all of these matters, showing appellant's promise of further settlement was made conditionally but the condition upon which it depended did not happen. However, such matters were not taken into consideration in submitting the case to the jury.

It is elementary that a plaintiff must recover, if at all, on the theory pleaded and proved by him and not on some other theory. Cox v. Johnson, Tex.Civ.App., 259 S.W.2d 623; Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 245. Such rule applies in a venue action tried before a jury the same as in a trial on the merits, the only distinction being that on a hearing of plea of privilege, the issues are confined to venue facts. Williams v. Hemphill County, Tex.Civ.App., 254 S.W. 2d 839, 842.

The trial court's charge did not include any issue inquiring about the degree or duration of appellee's alleged incapacity or any issue with respect to appellee's damages by reason of alleged fraudulent representations made to him by appellant's agents. In order to sustain venue under Section 7 of Article 1995 it is necessary that all of the constituting elements of fraud be established, namely,

(1) A false representation made by defendant;

(2) The reliance thereon by the plaintiff;

(3) Action in reliance thereon by plaintiff; and,

(4) Damage to the plaintiff resulting from such fraud or misrepresentation.

Trinity Universal Ins. Co. v. Soliz, Tex. Civ.App., 241 S.W.2d 625, 627, and other authorities there cited. The record reveals that the trial court sought to make a finding on the issue of damage by inserting as a part of its judgment the following language:

"* * * and it further appearing from the evidence that plaintiff has suffered damage by reason thereof, which the court finds to be true."

But in our opinion such a question should have been submitted to the jury for a finding since the issue or question of damage had not been admitted or conclusively established. It is true that appellee gave oral testimony to the effect that he was still partially incapacitated, did not return to work until April of 1954 and that he had still not returned to a full time job. But he likewise introduced his own statement made and found in the transcript sent to the Industrial Accident Board saying, among other things, that he "began losing time from work on May 20, 1953, and returned to work November 25, 1953." The doctor's letter that appellee introduced in evidence has a tendency to show that appellee was not further damaged. For these reasons it is our opinion that the question of damage should have been submitted to the jury and it was error for the trial court, under the record, to make a finding on the issue of damage. For all of these reasons stated it is our opinion further that appellant's charge of error because the trial court's charge to the jury did not conform to the pleadings and that the jury's findings are insufficient to sustain the trial court's judgment are sustained.

■ Appellant further contends that the evidence was insufficient to support the findings to the effect that appellee did not know when he cashed the $150 draft that the same had been issued in final settlement of his compensation claim and that a person of ordinary prudence, situated as appellee was, would not have known that the draft had been issued in final settlement. These contentions are well taken by us.

It is true that appellee testified that he did not read the compromise settlement agreement when he signed it on November 27, 1953, because he did not have his glasses; that Mr. Hickman assured him it was not a final settlement and he took his word for it. However, that instrument in effect clearly states on its face a full and final compromise settlement, effective after being approved by the Industrial Accident Board, which Board approved it thereafter on December 7, 1953. But, be that as it may, appellee did not receive the draft for $150 at the time he signed the compromise settlement agreement but the draft was mailed to him by appellant two weeks later of date December 10, 1953, with a compromise settlement receipt in triplicate attached thereto for execution by appellee, who cashed the draft and executed the said receipt in triplicate on December 11, 1953, at a bank in Dumas, Texas, with a bank teller and the wife of a local deputy sheriff witnessing his signature thereon. The said instrument is here set out in full in the following language:

"Compromise Settlement Receipt
Industrial Accident Board
Austin, Texas

"Notice: This receipt shall be executed in triplicate, one copy of which shall be kept by the employee, one copy by the insurance Company, and one copy immediately filed with the Industrial Accident Board. Each space in receipt must be completely filled out and correctly dated at time of execution. Failure to observe above instructions will result in return of this receipt.

"Received of Texas Employers Insurance Association the sum of One Hundred Fifty and no/100 dollars and no cents in full compromise settlement, accord and satisfaction of all compensation and claims for compensation which I have or could have against it by reason of injuries received by me on or about the 20th day of May, 1953, while in the employ of A. J. Betty, Constr. Engr. of Stratford, Texas, and being the identical amount agreed upon between Texas Employers Insurance Association and me in compromise settlement agreement heretofore entered into between us on or about the 1st day of December, 1953,

and which has heretofore been presented and approved by the Industrial Accident Board of the State of Texas, and to which reference is here made of all purposes.

"(Sgd.) Don C. McDaniel

Signature of Injured Employee)

Don C. McDaniel
515 Klein
Dumas,
"Witnesses:
Mrs. Horace Hamrick (Sgd.)
G. Eads (Sgd.)

"Dated this 11th day of Dec., 1953.

"(Stamp) Industrial Accident Board, State of Texas. Received Dec. 16, 1953."

Appellee testified that he read the compromise settlement receipt before he cashed the draft. The receipt is couched in simple language easily understood and speaks for itself. No where did appellee testify that he did not understand the language there used or any part of it. It clearly shows it is a final payment in accordance with a final settlement agreement previously executed and certainly put appellee on notice to read the compromise settlement agreement if he had not read the same before that time. The face of the draft itself shows it is for "Payment of Compensation Settlement Agreement." Appellant's agents were not present when appellee cashed the draft and signed the compromise settlement receipt and we have failed to find any pleading or proof to the effect that appellee complains he was fraudulently induced to sign such receipt.

In the case of Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 556, the court said in part:

"One is presumed to intend what he does or undertakes to do by the terms of a written instrument voluntarily signed by him. To use the language of Justice Hunt in Upton v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203, 205: 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or. did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.' "

However, in the case at bar appellee testified there was nothing to prevent him from reading the receipt he signed and that he did read it before cashing the draft for $150.

In our opinion the evidence is insufficient to support the jury finding to the effect that appellee did not know the $150 draft had been issued in final settlement of his claim when he cashed it. Certainly there is no evidence to support the jury finding to the effect that a person of ordinary prudence, situated as appellee was, would not have known that the draft was issued in final settlement. In any event, when appellee voluntarily cashed the $150 draft and voluntarily signed the compromise settlement receipt therefor, he thereby ratified the compromise settlement agreement which depended, according to his own pleadings and proof, upon the doctor's medical report, which report does not support appellee's claims here made.

In as much as appellee's pleadings alleged appellant conditionally promised him an additional payment in the event the medical report of the attending physician showed any permanent disability, we think his pleadings were subject to appellant's exceptions urged. For the reasons herein stated, appellant further contends that its motion for judgment sustaining its plea of privilege should have been granted by the trial court on the grounds of insufficient pleadings and evidence to support his claims of fraud, with which contention we agree.

We therefore reverse the trial court's judgment and here render judgment sustaining appellant's plea of privilege and do hereby order and direct that the cause on the merits be transferred to the district court of Dallas County, Texas. Reversed and rendered with instructions.