Edward C. JAMES et al., Appellants,

v.

EAGLE ROCK RANCH et al., Appellees.

No. 10491.

Court of Civil Appeals of Texas.

Austin.

June 12, 1957.

Rehearing Denied July 10, 1957.

Patterson & McDaniel, Houston, for appellants.

William Kay Miller, Bagby & Winters, Austin, Tom G. Oliver, Jr., San Marcos, for appellees.

HUGHES, Justice.

This is a venue case.

Eagle Rock Ranch, a domestic private corporation, and C. B. Smith sued appellants Edward C. James, Conso Realty Co. and Eagle Rock Corporation, both domestic private corporations, in the District Court of Hays County. By their petition appellees alleged:

That pursuant to certain contracts and deeds, attached to the petition as exhibits, Eagle Rock Ranch became the owner of certain real and personal property therein described. As part of the consideration of such purchase the payment of one promissory note was assumed and certain vendor's lien notes were executed.

That prior to the execution of such instruments appellants represented to appellees, upon which representations appellees relied, that all such property was free and clear of liens and encumbrances except those specified but that appellees "say that they have recently discovered that various persons in the vicinity of the lands involved (the names of which persons are too numerous to plead, but are well known to the defendants) claim and own rights of entry, and other easements, for use of the ranch lands set forth in the aforesaid exhibits and described therein, and by reason of which such representations, agreements, and warranties have proved to be false and untrue, and plaintiffs say that said easements and rights of entry are of numerous classes and kinds and are well known to defendants, * * *"

The nature of these rights is more fully described in an exhibit attached to the petition.

The petition contained an offer to do equity and prayed for rescission of the contract and deeds, for incidental damages and, in the alternative for damages at law.

Each appellant filed a plea of privilege to be sued in Harris County.

After hearing these pleas were overruled.

In the controverting affidavits filed by appellees to the pleas of privilege it was alleged that the representations, above referred to, were made by appellants in Hays County.

Venue in the court below is sought to be sustained under subdivisions 7, 14, 23 and 29a, Art. 1995, V.A.C.S.

We will first discuss subd. 7, supra, which fixes venue in cases based on fraud in the county where the fraud was committed.

Appellants concede that the evidence shows that they represented to appellees in Hays County that the properties were free and clear of all encumbrances except those specified. They deny that there is any probative evidence of the falsity of such representations.

The Eagle Rock Ranch consists of land which, for our purposes here, falls into

three categories (1) the ranch proper, about 900 acres (2) the club property, about 20 acres and (3) subdivided lots known as Eagle Rock Ranchitos.

The Club property on which is located the Eagle Rock Ranch Club, swimming pool etc. was under lease to the Club and the conveyance to appellee Eagle Rock Ranch was made subject to the terms of such lease. One provision of this lease reads:

"During the entire term of this lease the following improvements and/or facilities of the Club, included in this lease, shall be furnished by Lessor to the members of Lessee free of any charge: The swimming pool, tennis courts; fishing privileges; use of roads, bridle paths and the airplane landing field; * * *"

The conveyance of the Ranchitos was made subject to the terms and conditions of previously recorded instruments.

These instruments are not in the record but there is verbal testimony that they provided that Ranchitos purchasers automatically became members of the Eagle Rock Ranch Club.

Also absent from the record are deeds to individual purchasers of Ranchitos.

We find, however, an affidavit in the record made by eleven Ranchito owners from which we quote:

"Each of us is an owner of property in Eagle Rock Ranchitos, Section One, and/or Eagle Rock Ranchitos, Section Two, and/or Eagle Rock Ranchitos, Section Three, according to a plat of each of the said sections now of record in the Deed Records of Hays County, Texas; or is an owner of property within the area that is commonly known as Eagle Rock Ranch and was subdivided into tracts or lots but not designated as a section. The area commonly called Eagle Rock Ranch is on Cypress Creek about 2½ miles north of Wimberley, Texas.

"* * * * * *

"We and each of us received either in person or by mail from a duly authorized agent of Eagle Rock Corporation and Eagle Rock Ranch Club, a corporation, an exact copy of Exhibit A and of Exhibit B. In addition to receiving the copies of Exhibit A and B from the duly authorized agent of Eagle Rock Corporation and Eagle Rock Ranch Club, one or more duly authorized agent of each of the two corporations assured us that the information in the brochures, marked Exhibit A and Exhibit B and attached hereto, was true and correct. In addition, there were stacks of Exhibit B placed in the lobby of the clubhouse located on the property leased to Eagle Rock Ranch Club for any one to see or to take and read at his convenience.

"Each of us says that, except for the representation made and inducements offered by the duly authorized agent or agents of Eagle Rock Corporation and Eagle Rock Ranch Club, as outlined in each of the exhibits, we, and each of us, would not have purchased the property that we now own in Eagle Rock Ranchitos, Section One and/or Eagle Rock Ranchitos, Section Two and/or Eagle Rock Ranchitos, Section Three, or in a subdivided area of the Ranch not called a Section.

"Each of us is a member of Eagle Rock Ranch Club. Exhibit 'A' contains, among other statements as to rights of property owners and members of Eagle Rock Ranch Club, the following:

" 'Certainly the million dollar Eagle Rock Ranch is an above average investment; yet all of Eagle Rock actually becomes a part of your easement when you buy one of the existing ranch homes or buy a lot for construction of the home of your choice.'

"Exhibit 'B' in the paragraph referring to the subdivision of areas of

the ranch into lots contains this language:

" 'These Ranchitos are just large enough to provide plenty of space between you and your congenial neighbor—no responsibility or a lot of land to look after. But, all around, you have more than 1,000 acres of park-like ranch that's yours to play in.

" 'While the property outside your own Ranchito is owned by a separate corporation, Eagle Rock Ranch members have an easement over the entire ranch. In other words, members of the club have all the pleasure rights over the entire ranch property. These rights are legally binding against any owner of the property for 25 years, and are subject to renewal after that time.'

"Each of us has for a year or longer used for recreational purposes many times, frequently for long periods, the property called Eagle Rock Ranch, claiming the right to do so as an easement. The use by us as by many others, who are property owners within the ranch area, and by member of Eagle Rack Ranch Club has been based in part on the right to do so as indicated in the Exhibits A and B attached."

This affidavit was admitted in evidence under an agreement by counsel that all exhibits attached to the pleadings of either party "may be considered as in evidence."

The affidavit was hearsay. None of the affiants testified. We do not interpret the agreement of counsel as admitting the truthfulness of the statements in the affidavit or as admitting that affiants would have testified to the matters sworn to in the affidavit.

Without the affidavit there is no evidence, except perhaps other hearsay statements made by witnesses as to what Ranchito owners had said about the matter, that Ranchito owners were claiming or had permanent easements over the ranch proper.

■ Hearsay evidence is no evidence. It will not support a judgment. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533.

Appellees cite McCormick and Ray, 2d ed., Sec. 787, as authority for admitting affidavits in evidence on venue hearings. To read the text is to refute this contention. To read Winkfield v. State, 41 Tex. 148, cited as to venue one will note that a change of venue in a criminal case was involved under a statute authorizing the use of affidavits.

■ In view of another trial we suggest that the brochure be fully identified by showing under whose authority it was published and circulated as this will undoubtedly bear upon its admissibility and effect.

Since, in our opinion, there is no evidence that the representations made by appellants were false there is no evidence of fraud and the requirements of showing venue under subd. 7 have not been met. See Texas Employers Ins. Ass'n v. McDaniel, Tex.Civ.App., Amarillo, 286 S.W.2d 465.

■ This holding likewise disposes of the attempt to invoke the provisions of subd. 23, supra. In the absence of the proof of fraud there is a failure to prove a cause of action and hence a failure to prove that the cause of action or a part thereof arose in Hays County under subd. 23.[1] Castro Cooperative Gin Co. v. Harrison, Tex.Civ.App., Eastland, 272 S.W.2d 538.

We do not find it necessary to discuss the applicability of subd. 29a, supra, relating to retaining venue in Hays County as to necessary parties for the reason that venue as to all appellants in Hays County depends upon establishment of the falsity of the representations made as to property

---

1. Other aspects of subd. 23 are not briefed by appellees for which reason they are not discussed.

being unencumbered. They were all parties to the contract which stated that the property was free of "encumbrances of every character" except those specified. If the falsity of this representation is established by competent evidence venue will be properly laid in Hays County under subd. 7, supra, as to all appellants.

There remains for us to consider subd. 14, Art. 1995, which reads:

"14. Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

Appellees place strong reliance upon our recent opinion in State v. Wynn, Tex.Civ. App., 295 S.W.2d 444, writ dism., w. o. j., Tex., 301 S.W.2d 76. There as here the grantee in a deed brought suit to rescind and cancel a conveyance of real estate on the ground of fraud, the only difference being that in Wynn the State sought establishment and foreclosure of a lien in the amount of the purchase money it had paid. Similar relief is not sought here.

Procedurally there are these differences between the two cases: In Wynn the suit was not brought in the county where the land lay. Here it was. In Wynn the defendants filing pleas of privilege asked that the case be transferred not to the county of their residence but to the county in which the land was located. Here appellants ask the suit to be transferred to the county where they reside.

When a plea of privilege is filed the burden is upon the plaintiff to plead and prove that the suit is brought in a proper county. Coalson v. Holmes, 111 Tex. 502, 240 S.W. 896; Tunstill v. Scott, 138 Tex. 425, 160 S.W.2d 65; 43-B Tex.Jur.Venue, Secs. 101, 155. See Pena v. Sling, 135 Tex. 200, 140 S.W.2d 441, 128 A.L.R. 1223, which also holds that a plea of privilege covers all venue pleas and not merely pleas of personal privilege.

In Wynn the only exception (7) relied on by the State to sustain venue in Travis County was that the defendants filing the pleas had committed fraud in that county. We found that there was no evidence of any fraud having been practised in Travis County. The pleas of privilege therefore *had* to be sustained. Authorities, supra.

The only remaining question in Wynn was: To which county should the suit be sent? Rule 89, Texas Rules of Civil Procedure, provides that if the plea is sustained the cause shall be transferred to the "proper court." The "proper court" in Wynn was Maverick County the county where the pleas requested that the suit be sent. It could not have been transferred to any other county. Tunstill v. Scott, supra; Fouse v. Gulf, C. & S. F. Ry. Co., Tex.Civ. App., Fort Worth, 193 S.W.2d 241.

We did say in Wynn "We believe that this case is one affecting the title to land located in Maverick County, Texas, within the purview of subdivision 14 of Art. 1995." While this statement was not essential to a decision in that case it had eminent forebears. In Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, 114, Justice Stayton, in speaking of a statute substantially the same as subd. 14, said:

"An examination of the several subdivisions of article 1198, Rev.St., shows an intention on the part of the legislature to require such actions as may affect, or as are brought to secure, title, either legal or equitable, to land, to be brought in the county in which the land is situated. * * * The evident intention was to provide the venue in all actions in which the title to land was in controversy; * * *."

In Herrington v. McDonald, 141 Tex. 441, 174 S.W.2d 307, 308, Mr. Justice Critz, for the Court, stated:

"It is settled by the decisions of this court that Subdivision 14 of Article

1995, supra, governs all suits which involve disputed issues of title to land in this State."

By a Per Curiam opinion the Supreme Court in Hammonds v. Hammonds, Tex., 285 S.W.2d 362, 363, said:

"* * * Where a disputed issue of title is presented, the district court of the county in which the land is situated shall first or originally try the issue of title."

Notwithstanding these pronouncements the courts have in deciding particular cases given a rather strict construction to subd. 14. For instance in suits seeking specific performance of contracts to convey land they have adhered to the fiction that these are personal actions and not in rem proceedings and hence not governed by subd. 14. Smith v. Hall, 147 Tex. 634, 219 S.W. 2d 441. Yet we have been realistic enough not to wait around for the vendor to execute a conveyance. The decree itself may transfer title from the vendor to the vendee. Copeland v. Bennett, Tex.Civ.App., El Paso, 243 S.W.2d 264. Obviously such a suit "affects" or "involves" the title to real estate.

■ It has been held many times that a suit by a grantor to rescind a conveyance of land for fraud and to recover the land is within subd. 14. Galindo v. Garcia, Tex. Civ.App., San Antonio, 222 S.W.2d 477.

No cases (except Wynn) have been cited by the parties and none have been found by us which discuss the converse of the situation in Galindo.[2] It would seem that a suit by a defrauded grantee to divest himself of title to land "involves" or "affects" the title to the same extent that a suit by a defrauded grantor does. We cannot convince ourselves, however, that a suit by the grantee, as here, comes within any of the specific provisions of subd. 14.

■ Appellants' suit is not to recover lands. It is just the opposite. It is a suit to divest themselves of title to land.

It is not a suit to remove encumbrances upon the title to land or to quiet the title to land because appellants do not claim to own the title encumbered or to be quieted.

■ No one but an owner can maintain a suit to quiet title or remove cloud. 34 Tex.Jur. p. 826. Similarly a nonowner could not sue to remove an encumbrance on land.

In Eckert v. Wendel, 120 Tex. 618, 40 S.W.2d 796, 797, 76 A.L.R. 855, the Court said:

"The law is settled in Texas that a creditor, though he have no specific lien, may maintain an action in equity to vacate a fraudulent conveyance of his debtor's land. Until the creditor, in some manner—such as by levy of attachment or execution or by record of an abstract of judgment—acquires a lien, or until he acquires title by sale under execution, his only remedy, as against the grantee in a conveyance of real estate in fraud of his rights, is an action for a decree annuling the conveyance as an obstruction to the collection of his debt. Such an action is not one for the recovery of land, nor is it one to enforce a lien on land, but it is simply an action to cancel a conveyance of land because of fraud, * * *."

So here, in our opinion, the action by appellees is simply an action to cancel a fraudulent deed which is an obstruction to the recovery of the consideration given by them for the land.

■ The judgment of the Trial Court is reversed and this cause is remanded in order that the issues of fraud may be fully developed.

Reversed and Remanded.

2. This, after such long lapse of time, is mute but very strong evidence that subd. 14 does not control.

**On Motion for Rehearing**

Answering appellees' contention that it is unfair to permit appellants to object to the hearsay nature of evidence which they agreed to admit we wish to point out that in Muldrow v. Texas Frozen Foods, Tex. Civ.App., 293 S.W.2d 221, reversed Tex., 299 S.W.2d 275, a letter, patently hearsay, was admitted in evidence without objection and was briefed by all parties as evidencing its contents and we acted on it accordingly. Only on rehearing did the appellant claim that our decision was based on incompetent evidence. The Supreme Court, under these circumstances, held the letter to be hearsay and without probative force.

Here appellants have questioned the competency of the hearsay evidence in their brief. If it is not too late on motion for rehearing in this Court to raise the objection of hearsay after such evidence has been weighed by the Court at the instance of all parties then we do not believe the objection made by appellants in their brief is too late.

The motion is overruled.

Motion overruled.