**BATEX OIL COMPANY et al., Appellants,**

v.

**LA BRISA LAND AND CATTLE COMPANY, Appellee.**

**No. 13843.**

Court of Civil Appeals of Texas.

San Antonio.

Dec. 13, 1961.

Rehearing Denied Jan. 10, 1962.

Lyne, Blanchette, Smith & Shelton, Erich F. Klein, Jr., Dallas, Fouts, Moore, Williams & Caldwell, Houston, for appellants.

Pope & Pope, Rio Grande City, for appellee.

BARROW, Justice.

This is a venue case. Suit was brought by La Brisa Land and Cattle Company in the District Court of Starr County, against Batex Oil Company, H. J. Porter, James W. Porter and R. L. Wheelock, along with other named defendants, to cancel and annul an oil, gas and mineral lease on a certain tract of land situated in Starr County, on the ground that the oil and gas wells on said land are not producing in paying quantities; and in the alternative plaintiff prayed for cancellation of said lease covering all the land in said tract except twenty acres surrounding each of the producing oil and gas wells, and further alternatively prayed that defendants be required to reasonably develop all the remaining portions of said tract. Each of the above-named defendants filed a plea of privilege to be sued in the county of his residence. Plaintiff controverted each of the pleas and relied on Article 1995, Subd. 14, Vernon's Ann.Civ. Stats., to maintain venue in Starr County. The defendants supplemented their pleas of privilege and affirmatively alleged that plaintiff's allegations that there was no production of oil and gas in paying quantities from said lease, were false and not made in good faith, but fraudulently made for the purpose of maintaining venue in the county of suit. Upon a hearing before the court, each of the pleas of privilege was overruled. The above-named defendants have appealed.

Appellants rely for a reversal upon three points of error. Under the view we take of the case, we need not pass upon the first point.

Under their second point appellants contend that the trial court erred in holding

that the cause of action on the covenant of reasonable development was controlled by Subdivision 14 of Article 1995, Vernon's Ann.Civ.Stats. Under their third point they contend that the court erred in holding that appellee's allegations of cessation of production of oil and gas in commercial or paying quantities were made in good faith and were not fraudulently made for the purpose of maintaining venue. We shall consider both points together.

The lease involved is dated May 27, 1940, and is in the usual form of oil and gas lease. It grants a determinable fee in the mineral estate for the primary term of ten years and as long thereafter as oil, gas or other mineral is produced from said land. The lease contained the following provision:

"The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall reasonably develop the acreage retained hereunder, but in discharging this obligation it shall in no event be required to drill more than one well per twenty (20) acres of the area retained hereunder and capable of producing oil, gas or other mineral in paying quantities."

Subdivision 14 of Article 1995, states:

"Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

The precise question which will determine the decision of this case is whether or not appellee's allegation that the lease has terminated by reason of cessation of production in paying quantities, was made in good faith or only for the purpose of maintaining venue. And if it be determined that the allegation was not made in good faith, then does appellee's suit for the alleged breach of the covenant of reasonable development come within the provisions of Subdivision 14 of Article 1995, Vernon's Ann.Civ.Stats.

The venue facts under Subdivision 14 are, (1) the nature of plaintiff's claim and (2) the location of the land. Ordinarily these facts are proved by the allegations of plaintiff's petition and by evidence showing the location of the land. Piazza v. Phillips, 153 Tex. 115, 264 S.W. 2d 428; Cowden v. Cowden, 143 Tex. 446, 186 S.W.2d 69. But when, as in this case, defendants allege in their pleas of privilege that plaintiff's allegation that the lease has been terminated by cessation of production of oil or gas in commercial quantities was not made in good faith, but was fraudulently joined with the action for alleged breach of covenant of reasonable development, an additional issue is raised for decision on the venue hearing. Watson v. Baker, 67 Tex. 48, 2 S.W. 375; Thornton v. Thornton, Tex.Civ.App., 74 S.W.2d 429; Southwestern Surgical Supply Co. v. Scarborough, Tex.Civ.App., 15 S.W.2d 65; Koch v. Roedenbeck, Tex.Civ.App., 259 S.W. 328; Baldwin v. Baldwin, Tex.Civ.App., 233 S.W. 130; Pearce v. Wallis, Landers & Co., 58 Tex.Civ.App. 315, 124 S.W. 496; San Antonio & A. P. R. Co. v. Dolan, Tex. Civ.App., 85 S.W. 302; Texas & P.R. Co. v. Stell, Tex.Civ.App., 61 S.W. 980; Gulf, C. & S. F. R. Co. v. Short, Tex.Civ.App.,

51 S.W. 261; 1 McDonald, Texas Civil Practice, 422, § 4.38, Subsec. II.

In this case appellee alleged that there were four producing wells drilled on the leased land. Three of them were oil wells and one a gas well; that those three oil wells are not producing in paying quantities; that the gas well was completed as a shut-in gas well, that no connection thereto to a pipeline has ever been made, and as a result there has been no gas production. In that connection, appellee alleged that appellants have endeavored to continue said lease in force by the payment of the shut-in gas well rental of $100.00 a year. Appellants alleged that all the allegations of appellee with reference to no production in paying quantities were false and fraudulently made for the purpose of retaining venue in Starr County for litigation of its alleged breach of covenant. Appellants affirmatively alleged that said oil wells were producing in paying quantities; that the gas well is also producing in paying quantities, and that appellee is and has been actually receiving royalty on such production.

■ Upon the hearing of the pleas of privilege, appellants introduced evidence showing that appellant Batex Oil Company purchased this lease in the latter part of 1954, and at that time there were one oil well and one gas well producing and they are still producing; that during the six years appellants have owned and operated the lease they have received a net profit, over and above operating expenses, in excess of $70,000.00; that during each and every year, according to the figures, up to the time of the filing of this suit, said lease has shown a substantial net profit from the production of oil and gas over operating expenses; that the royalty from this production has been paid; that said gas well is not a shut-in well but is and has been connected with their gathering system, in connection with Tennessee Gas Transmission lines and the gas was delivered and sold to that Company. Appellants further proved the payment of the royalties. Appellee did not in any way question the data produced in court showing such production, and offered no evidence whatever to refute the evidence offered by appellants, but in its brief admits the payment of the royalties. Therefore, the conclusion is inescapable that the lease had not ceased to produce oil and/or gas in paying or commercial quantities, as the term "produce", as used in oil and gas leases, is defined by the Supreme Court in Garcia v. King, 139 Tex. 578, 164 S.W.2d 509. See also Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774. Furthermore, the evidence shows without dispute that appellee, at the time it filed this suit and at the time it filed its controverting affidavits, had knowledge of these facts or had the means of knowledge thereof at hand. Therefore, the trial court erred and abused its discretion in finding that appellee's allegation that production in paying quantities had ceased on the land and the lease was terminated, was made by appellee in good faith.

■ Coming to the question of whether appellee's alleged cause of action for breach of the implied covenant of reasonable development comes within the provisions of Subdivision 14 of Article 1995. We are of the opinion that the answer to that question depends upon whether or not a breach of the covenant of reasonable development of the leased land would entitle the lessor to a forfeiture and termination of the mineral estate in the land. Since the decisions of the Supreme Court in Waggoner Estate v. Sigler Oil Company, 118 Tex. 509, 19 S.W. 2d 27, and Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464, any doubt as to the answer to that question has been set at rest. In the Waggoner case the Court pointed out that after the discovery of oil or gas on the leased land the lessee was under the implied obligation to continue with reasonable diligence the work of exploration for and production of oil and gas from the leased land. The Court, however, held that such obligation was a mere covenant and not a limitation or condition subsequent which

would authorize a forfeiture of the lease, and that the usual remedy for breach of such covenant is an action for damages for the breach. And under extraordinary circumstances, in cases where the award of damages is inadequate to afford complete relief, a court of equity might enter an alternative decree requiring the lessee to do those things necessary to fulfill his obligation under the implied covenant, within a reasonable time fixed by the Court, the lease to be forfeited and cancelled in default of such performance. See, also, Scott v. Jackson, Tex.Civ.App., 37 S.W.2d 1068; Rendleman v. Barlett, Tex.Civ.App., 21 S.W.2d 58. We are of the opinion that appellee's petition and controverting affidavits state no cause of action which would authorize cancellation of the lease in question, and that the exclusive remedy is for damages for the breach, or, in the alternative, for specific performance of lessees' obligation.

We are further of the opinion that such action for damages would not be *damages to real estate,* such as is contemplated by Subdivision 14 of Article 1995, Vernon's Ann.Tex.Stats. Moreover, we are of the opinion that the alternative action for specific performance of the obligation would not bring the case within the provisions of said subdivision. It is well settled that a suit for specific performance of a contract of sale of real estate, although the judgment therein may result in a transfer of title to real estate, does not come under Exception 14 of the venue statute requiring suits for the recovery of land or damages thereto to be brought in the county where the land is situated. Smith v. Hall, 147 Tex. 634, 219 S.W.2d 441.

Having reached the conclusion that the trial court erred in overruling the pleas of privilege, the judgment is reversed and remanded, with instructions to transfer the case as to the appellants to the county of their respective residences, in accordance with Rule 89, Texas Rules of Civil Procedure.