Amando CANALES, et al., Appellants,

v.

ESTATE OF Jose CANALES, et
al., Appellees.

No. 04–83–00316–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1984.

H.H. Rankin, Jr., McAllen, for appellants.

Seagal Wheatley, San Antonio, Joseph Zitomer, Silver Spring, Md., for appellees.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from an order sustaining the pleas of privilege of six defendants, Gus T. Canales, Patricia Canales, Mary Grace Canales Hornsby, Charles Hornsby (her husband), Tomasita Canales, and Anne Fuller. Thirty-five plaintiffs sued twenty-five defendants for breach of an oil and gas agreement. Plaintiffs and defendants before this court all claim interests in lands inherited from common ancesters, Andres Canales and his wife, Tomasa Cavezos de Canales. By their pleadings and arguments plaintiffs contend venue must be maintained in Jim Hogg County because part of the subject land is located in that county and this suit is for recovery of royalty interests in the land. TEX.REV. CIV.STAT.ANN. art. 1995(14) (Vernon 1964). We affirm in part and reverse and remand in part.

The children of Andres and Tomasa Canales divided their estate as the result of district court proceedings in 1934, each receiving several thousand acres of land in south Texas. In 1937, five of the children—there are seven—entered into an agreement, which is the basis of this suit, whereby each party agreed that if oil, gas or minerals were discovered on that party's part of the original Canales estate, he or she would assign an undivided one-fifth of his or her royalty interest to each of the other parties. The contract specifically provided that the agreement "is not intended for record or in any way to affect the title to the lands of the parties hereof." It further provided that the contract ceased to exist and was void ten years from that date if no oil, gas, or other minerals were discovered in paying quantities on the Canales estate.

Each party to the agreement was title owner to certain tracts within the estate. J.T. Canales, a son and one of the parties,

owned the Baluarte Ranch tract when he signed the agreement. Through the years oil in paying quantities was produced on the four other tracts, but not on the Baluarte Ranch tract. However, J.T. Canales and his wife executed assignments of any royalty interests to his four brothers and sisters and their families. On June 25, 1956, he amended the assignments to eliminate any royalty interest to the other parties provided there was no production in paying quantities of minerals on the Baluarte tract by December 24, 1976. Subsequent to the termination date, oil was produced in paying quantities on the Baluarte tract. The defendants in this venue case are descendants of J.T. Canales (and husband of one).

On appellate review in a venue case the court does not concern itself with the merits of the case and the rights of the parties. Although appellants present nine points of error, we can address them as four in our disposition of the venue question: whether the trial court correctly sustained the plea of privilege of Anne Fuller; whether this is an action for recovery of land which places mandatory venue in Jim Hogg County; whether defendants judicially admitted this is a suit for recovery of land; and whether defendants' use of discovery waived their pleas of privilege.

## FULLER'S VENUE QUESTION

When Anne Fuller filed her "Plea of Privilege," in June, 1980, she stated she was a resident of Washington, D.C. at the time the suit was instituted and when she was served with process. She did not state that she had a residence in Dallas county nor that she contemplated a move to a residence there. She filed her original answer five minutes subsequent to the first instrument. In her second amended plea she states she is a resident of Dallas County but was a resident of Washington, D.C. at the time of the institution of the suit and service of process upon her.

■ It is axiomatic that article 1995 benefits only residents of the State of Texas. "No person *who is an inhabitant of this State* shall be sued out of the county in which he has his domicile ..." (Emphasis added.) One having no residence in Texas has no right to be sued in any particular county unless venue is controlled by some mandatory provision of the statute. *See Pegram v. Owens,* 64 Tex. 475 (1885); *Nolte v. Saenz,* 153 S.W.2d 281 (Tex.Civ. App.—San Antonio 1941, no writ). TEX.R. CIV.P. 86. 1 MCDONALD, TEXAS CIVIL PRACTICE, § 4.03.2 (1981). When a defendant who resides in another state files a "plea of privilege" asserting that he is not a resident of the county where the suit was filed but instead is an out-of-state resident, the plea is insufficient because the defendant fails to allege he is a resident of any county in the State of Texas. *Peacock v. Bradshaw,* 145 Tex. 68, 194 S.W.2d 551, 554 (1946).

■ Fuller filed her answer subject to the original "plea of privilege." She now argues that no exceptions were leveled at the plea, and her amendment later asserting her residence to be in Dallas replaced the defective plea. We do not agree. The first pleading was a nullity not only for the reasons stated but also in that it requested the court either to transfer the case against her "to a court having proper jurisdiction or dismiss the action" against Fuller. The trial court had jurisdiction to do neither of these under article 1995.

A plea in abatement seeks to have a cause of action dismissed. TEX.R.CIV.P. 85. Generally when an instrument, such as the first two herein, requests dismissal of the cause, this may be construed as a plea in abatement. In any event we hold the first was not a plea of privilege under article 1995. Fuller filed her original answer on June 6, 1980; she filed her first amended "plea of privilege" on February 19, 1981, again asserting she was then and at the time the suit was instituted a resident of Washington, D.C.; there was an identical prayer for transfer to a court having proper venue and jurisdiction or dismissal of the action against her. On August 26, 1982, she filed a second amended plea of privilege in which she stated she

now resided in Dallas County, two years after the original answer was filed.

■ Even under the liberal pleading practice authorized by Rule 84, a plea of privilege is still required to be filed in due order, that is, prior to any plea other than that of a special appearance under Rule 120a. Venue may be waived by failure to comply with this due order of pleading. *Crosby v. Heldt Bros. Trucks*, 394 S.W.2d 235, 237 (Tex.Civ.App.—San Antonio 1965, no writ) and cases cited therein. In the present case Fuller invoked the general jurisdiction of the court, appeared in the case, and waived any venue rights she might have had. *Id.* We, accordingly, reverse and set aside the order sustaining the plea of privilege of Fuller.

## DISCOVERY AFTER PLEADING VENUE PRIVILEGE

■ Defendants filed requests for admissions, interrogatories, and a motion to compel answers after filing their pleas of privilege. Plaintiffs erroneously contend these discovery actions resulted in waiver of defendants' pleas of privilege. It is established law that issuing process for witnesses and taking depositions shall not constitute waiver of a plea of privilege. *Petromark Minerals, Inc. v. Buttes Resources Co.*, 633 S.W.2d 657, 659–60 (Tex. App.—Houston [14th Dist.] 1982, writ dism'd w.o.j.). TEX.R.CIV.P. 88. The point of error is overruled.

## APPLICATION OF SUBDIVISION 14

■ The central question to this appeal is whether the action suffices as a recovery for land under subdivision 14 of article 1995 in effect at the time of this suit, which provides:

> Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie.

A plaintiff must establish two venue facts to invoke the mandatory provisions of subdivision 14: (1) the location of the land, and (2) the nature of plaintiff's claim. 1 MC-DONALD, TEXAS CIVIL PRACTICE, § 4.22.1 (rev.1981). It is undisputed in this case that part of the Baluarte tract is located in Jim Hogg County; accordingly, we need only ascertain the nature of plaintiffs' claim. We will examine, therefore, plaintiff's pleadings to determine the principal rights asserted, and the relief sought for the breach of that right. *See Roach v. Chevron U.S.A., Inc.*, 574 S.W.2d 200, 202 (Tex.Civ.App.—San Antonio 1978, no writ); *Batex Oil Co. v. La Brisa Land & Cattle Co.*, 352 S.W.2d 769, 771 (Tex.Civ.App.—San Antonio 1961, writ dism'd).

■ Both a royalty interest and an overriding royalty in minerals are "lands" for the purpose of fixing venue in suits for recovery of such interests or damages thereto, and damages to such estate are damages to land. *Anglo Exploration Corp. v. Grayshon*, 577 S.W.2d 742, 744 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.), with many citations confirming this established law. The law is equally well settled that oil and gas, when produced and severed, becomes personal property. *Phillips Petroleum Co. v. Mecom*, 375 S.W.2d 335, 339 (Tex.Civ.App.—Austin 1964, no writ).

■ The pertinent parts of plaintiff's first amended original petition can be summarized:

(1) The plaintiffs are either children, descendants of four children, or trustees of involved estates of Andres and Tomasa Canales and may be designated as parties to the 1937 agreement. J.T. Canales, also a son, was the other party. Minerals in paying quantities were produced within the specified 10 year period on the land belonging to the other four children. They executed the agreed royalty interest deed to J.T. Canales and to each other. There is no dispute that J.T. and his descendants benefited from the royalty interests derived from the land of his siblings on the "Canales estate."

(2) J.T.'s Baluarte tract did not produce any minerals. He amended his royalty

deed to his siblings in 1956. The amendment provided that his royalty deed would expire on December 24, 1976, if no paying production were obtained from the land by that time. J.T. died in 1976, but before his death J.T. sold the tract to his children. After 1976 production in paying quantities from the tract began.

(3) Plaintiffs plead they were in possession of their "aliquot royalty interest" in the land and that defendants unlawfully entered and dispossessed plaintiffs of their royalty interest on the premises and withheld possession [of the royalty interest] and the right to income from the property. Plaintiffs prayed for "title and possession of the ... royalty interest in said ... property, for their damage," and for general relief.

(4) Plaintiffs further plead conversion in that defendants continued to receive royalty income payments notwithstanding the provisions of the agreement. They further asked that a constructive trust be imposed upon the funds already received by the defendants and for an accounting, as well as damages for breach of the agreement between the five children. Attached to this petition are the agreement and the 1934 partition order dividing the original estate.

We deem the alleged actions of conversion and breach of contract and as well as the impression of a constructive trust on the *funds* to be primary and the principal right asserted in the suit. We find the pleadings for recovery of title to royalty interests, although couched in terms of a trespass to try title suit, to be ancillary and a method for attempting to assert a claim to royalty interests in land. *See*, as an example in pleading a royalty interest, *Anglo Exploration Corp. v. Grayshon, supra*, (where the minerals were still in the ground).

On the merits it appears plaintiffs contend defendants (J.T.'s descendants) were not authorized to terminate the contract (agreement) granting plaintiffs a percentage of any royalty interest in the tract after the termination date. Defendants contend the contract terminated on December 24, 1976, before any production of minerals had been achieved. Plaintiffs seek a constructive trust to be impressed upon any funds received by defendants, as well as an accounting. Defendants contend this is a suit to enforce a contract and recover damages based thereon, and they argue a suit of this nature is not within the purview of subdivision 14. They do not agree this is a suit to recover an interest in minerals in place, to quiet title, or to prevent wastes. They argue the fact involvement of the Baluarte tract does not bring the suit within subdivision 14 provisions.

■ It is not enough that the suit merely involves land; it must be a suit for the recovery of land or damages thereto, or to quiet the title to land, or to prevent or stay waste on land. *Ashby v. Delhi Gas Pipe Line Corp.*, 500 S.W.2d 686, 690 (Tex.Civ. App.—San Antonio 1973, writ dism'd). *Batex Oil Co. v. La Brisa Land & Cattle Co.*, *supra* at 773 stated:

> It is well settled that a suit for specific performance of a contract of sale of real estate, although the judgment therein may result in a transfer of title to real estate, does not come under Exception 14 of the venue statute requiring suits for the recovery of land or damages thereto to be brought in the county where the land is situated.

*See Smith v. Hall*, 147 Tex. 634, 219 S.W.2d 441 (1949), and *Umbaugh v. Miers*, 256 S.W.2d 660 (Tex.Civ.App.—San Antonio 1953, no writ). Plaintiffs' points of error in which they contend subdivision 14 applies to fix venue are overruled.

■ We have examined the record and find no merit in plaintiffs' contention of a judicial confession by defendants that the suit is one for recovery of lands. The transcription of that portion of the venue hearing alluded to by plaintiffs fails to convey with any degree of lucidity what was actually said or meant by the attorneys. There can be no judicial admission under those circumstances. *See Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415, 419 (1960).

It is not necessary in reaching a decision to address defendant's assertion that plaintiffs alleged in bad faith the trespass action in their first amended original petition because we regard this suit as one for breach of contract, enforcement of its terms, consequential damages flowing therefrom, and other relief.

We hold, therefore, the venue of this cause of action does not come within the purview of the provisions of subdivision 14. The trial court properly sustained the pleas of privilege of the five defendants other than Fuller.

The order sustaining the pleas of privilege of the five defendants other than Fuller is affirmed. The order sustaining the plea of privilege of Fuller is reversed and the cause against her remanded to Jim Hogg County for trial.

CADENA, Chief Justice, concurring:

While I agree that the judgment below should be affirmed, I cannot join in the conclusion that "the alleged actions of conversion and breach of contract and ... the impression of a constructive trust on the *funds*" constitute "the primary and principal right asserted in" plaintiffs' suit and that "the pleadings for recovery of title to royalty interests, although couched in terms of a trespass to try title suit," are "ancillary and a method for asserting a claim to royalty interests in land." *Anglo Exploration Corp. v. Grayshon*, 577 S.W.2d 742 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.) does not support this conclusion.

The first count of plaintiffs' petition is in the form of the traditional form of an action in trespass to try title and meets the requirements of Rule 783, TEX.R.CIV.P. This count, while describing the interest which plaintiffs' claim (a royalty interest in described land), follows the usual practice and does not allege how plaintiffs acquired their interest, nor does it contain any allegation of fact, other than ownership, in support of plaintiffs' claim of right to possession. Plaintiffs allege that defendants are withholding from plaintiffs the royalty interest and the right to receive the income from such interest.

The prayer under this first count is for judgment for title and possession of the royalty interest and for damages.

The second count is prefaced by a statement that it is an alternative pleading and is not a waiver of the first count. The allegations under this count are fairly summarized in paragraphs (1), (2) and (4) of the majority opinion except for the fact that the majority opinion fails to mention allegations that defendants breached a fiduciary duty.

By their prayer under the second count plaintiffs sought judgment for:

1. Title, possession and damages to their royalty interest.

2. An accounting of all royalties received by defendants.

3. The imposition of a constructive trust on such royalties.

4. The termination of such trust and disbursement of its assets.

5. Damages for breach of the agreement, breach of fiduciary duty, and conversion.

6. Exemplary damages, attorney's fees, interest and court costs.

*Grayshon* merely holds that (1) a royalty interest is "land" for the purpose of fixing venue under subdivision 14, and (2) a suit claiming equitable title to land by means of a constructive trust is a suit for recovery of land under such subdivision. 577 S.W.2d at 744, 745.

In describing the nature of plaintiff's suit in *Grayshon*, this Court said,

The principal right asserted in [plaintiff's] suit for which relief is sought is for establishment through a constructive trust of an equitable title to 20% of certain overriding royalties received by defendants under an assignment of an oil, gas and mineral lease covering certain lands in Webb County. The action for

specific performance and for breach of contract is merely ancillary thereto, ... 577 S.W.2d at 745.

The *Grayshon* opinion states that plaintiff's prayer was "for 20% of the overriding royalty interest, ... for an accounting, for exemplary damages, and for other relief ..." 577 S.W.2d at 745. According to the transcript which is on file as part of the official records of this Court, plaintiff's prayer was for (1) "any monies due after an accounting," (2) 20% of the overriding royalty interest, (3) "20% of all monies received by defendants as a result of production from" the lease, (4) exemplary damages, and (5) costs and such other relief, etc.

The relief sought in *Grayshon* is the same as the relief sought by plaintiffs in this case. In both cases plaintiffs sought judgment awarding them title to the royalty interest, the only difference being that in this case a judgment for title was listed first in the prayer while in *Grayshon* plaintiff's first prayer was for a judgment "for monies due" him. In *Grayshon,* plaintiff prayed for judgment for "20% of the" royalty interest while in this case plaintiffs, under both counts, prayed for judgment "for title and possession" and for damages. Grayshon, in his petition alleged that he "claims a constructive trust as to such royalty interest," although his prayer does not ask that a constructive trust be impressed on such interest. In this case while plaintiff asked that a constructive trust be placed on the "royalties received by" defendants, his allegations of breach of a fiduciary duty by defendants state grounds for imposition of a constructive trust on the royalty interest. It is true that plaintiff in this case did not ask for such relief in his prayer, but neither did Grayshon.

There is no basis for holding that in *Grayshon* the primary purpose of the suit was the establishment of an equitable title to the royalty interest while in this case "the alleged actions of conversion and breach of contract as well as the impression of a constructive trust" on the monies received by defendants are the primary and principal rights asserted, with the pleadings for recovery of title to the royalty interest are "ancillary." In both cases plaintiffs seek title to the royalty interest and recovery of the funds received by defendants.

The fact that, as asserted in the opinion of Justice Butts, the pleadings for recovery of the royalty interest in this case is "a method for asserting a claim to royalty interests in land" is no basis for giving primacy to the allegations which seek a recovery of monies received by defendants. If that be true, the claim of a constructive trust in *Grayshon* would be reduced to a similar secondary and ancillary status because such claim is no more than a method for asserting a claim to royalty interests in land. The majority theory, which makes the primary purpose of plaintiffs' suit the recovery, by means of a constructive trust, of monies received by defendant, leads to a strange result. Plaintiffs' prayer in this case expressly seeks "an order terminating said trust and disbursing its assets." Under the Justice Butts' theory, the principal purpose of the suit is to recover only such funds as defendants might have in their hands on the date of judgment, when the constructive trust is to be terminated and the assets disbursed, and the prayer to establish title to the royalty interest be treated as something thrown in as an afterthought of little importance so long as plaintiffs recover the money already received by defendants. It is clear that plaintiffs seek to establish title to the royalty interest and, on the basis of such title, to establish their right to the royalty payments which defendants have received. This is exactly what plaintiff sought in *Grayshon.*

Plaintiffs' alternative plea clearly recites that such alternative plea is not relied on to exclusion of any other title that plaintiffs' might establish under the count in trespass to try title. The alternative plea did not bar proof by plaintiffs of any title they

might establish under their trespass to try title count. *Rhoades v. Meyer,* 418 S.W.2d 300, 302 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.).

Plaintiffs' pleadings in this case clearly establish that the suit is one for the recovery of title to land under subdivision 14.

However, I agree that the order sustaining the pleas of privilege of the five defendants other than Anne Fuller should be affirmed, because the evidence is sufficient to support the finding that the allegations in plaintiffs' pleading seeking to maintain venue in Jim Hogg County under subdivision 14 were made in bad faith.

Plaintiffs' claim of equitable title must rest on the fact that oil and gas were being produced on the land in question by December 24, 1976. All of the evidence is to the effect that there was no production of oil, gas or other minerals on the land until 1977. While the witness who gave such testimony could not definitely establish the date in 1977 when such production began, he clearly and directly testified that there had been no production prior to 1977. Although plaintiffs' attorney testified that he embodied the venue allegations in the pleadings in good faith and had no personal knowledge as to whether production had begun by December 24, 1976, there is no testimony concerning the knowledge or belief of plaintiffs themselves. It would have taken no great effort for plaintiffs to discover whether there had, in fact, been production on the land prior to December 24, 1976. Plaintiffs had the means at hand of obtaining knowledge of the pertinent facts concerning production. There is no evidence that they made any effort to discover the relevant facts. Under these circumstances, the trial court did not abuse its discretion that in holding that the venue allegations were not made in good faith, and the evidence is sufficient to support the trial court's finding. *See Batex Oil Company v. La Brisa Land & Cattle Co.,* 352 S.W.2d 769, 772 (Tex.Civ.App.—San Antonio 1962, writ dism'd).