6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00068-CV


______________________________





IN RE: 


PEPSICO, INC. AND JEFF LOMBARDO








 
 

Original Mandamus Proceeding







 
 



Before Grant, Ross, and Cornelius,* JJ.

Opinion by Justice Cornelius

*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N


 Pepsico, Inc., and Jeff Lombardo (1) (Pepsico) petition for a writ of mandamus to the Honorable
Bonnie Leggat, judge of the 71st Judicial District Court in Harrison County, Texas. Pepsico requests
us to order Judge Leggat to withdraw her order striking Pepsico's mandatory venue argument in its
amended motion to transfer venue in a suit filed by the real parties in interest, Dr. Pepper/Seven-Up,
Inc. (Dr. Pepper).

 In the underlying litigation, Dr. Pepper sued Pepsico alleging causes of action under the
Texas Free Enterprise and Antitrust Act, for tortious interference with contract, and for an injunction. 
Dr. Pepper contended that Pepsico, through its contractual agreements with Tricon, the owner of
numerous Taco Bell, Kentucky Fried Chicken, and Pizza Hut restaurants, was causing those
restaurants to discontinue serving Seven-Up and to serve Pepsico-owned competitor brands instead.

 Pepsico filed a motion to transfer venue concurrently with its answer and later filed an
amended motion to transfer venue. In its original motion to transfer venue, Pepsico contended,
"[p]ursuant to Tex. Civ. Prac. & Rem. Code § 15.002(b) and Tex. R. Civ. P. 86," that specifically
(1) maintenance of the action in Harrison County would work an injustice on Pepsico; (2) the
balance of interests of all parties predominated in favor of the action being brought in Dallas or
Collin County; and (3) the action would not work an injustice on Dr. Pepper. In its amended motion,
Pepsico contended that the action is governed by Tex. Civ. Prac. & Rem. Code Ann. § 65.023(a)
(Vernon 1997), a mandatory venue statute.

 Dr. Pepper moved to strike the mandatory venue arguments in Pepsico's amended motion to
transfer venue. Dr. Pepper contended that Pepsico failed to raise its mandatory venue contentions
in its original motion to transfer venue, and for that reason Pepsico had waived its mandatory venue
contentions. After a hearing, the trial court granted Dr. Pepper's motion. The court specifically
found that Pepsico "waived any claim to improper or mandatory venue under . . . [Section] 65.023
by failing to specifically raise that challenge before or contemporaneously with the filing of their
responsive pleadings."

 Pepsico frames the issue here as whether its mandatory venue argument contained in its
amended motion to transfer venue relates back to its original motion to transfer venue. Pepsico
contends that, if its contentions related back, the trial court abused its discretion in striking Pepsico's
mandatory venue contentions, and mandamus is appropriate to enforce the mandatory venue
provision.

 Generally, a plaintiff has the first opportunity to fix venue in a proper county by filing suit
in that county. In re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding). The
defendant may object to the plaintiff's venue choice by filing a motion to transfer venue. Id. An
objection to improper venue is waived if it is not made by a written motion filed prior to or
concurrently with any other plea, pleading, or motion except a special appearance motion. Tex. R.
Civ. P. 86(1).

 Dr. Pepper first contends that mandamus is inappropriate because the trial court's ruling,
being based on waiver, is reviewable on appeal. Dr. Pepper cites In re Bahn, 13 S.W.3d 865, 872
(Tex. App.-Fort Worth 2000, orig. proceeding), and Schwartz v. Jefferson, 930 S.W.2d 957, 961-62
(Tex. App.-Houston [14th Dist.] 1996, orig. proceeding), but those cases hold only that issues of fact
cannot be reviewed on mandamus.

 In contrast, this proceeding involves a legal question of whether an amended motion to
transfer venue relates back to the original motion. If it does, the trial court abused its discretion by
refusing to consider Pepsico's mandatory venue arguments. Although Pepsico complains of the trial
court's order ruling that it waived its mandatory venue argument, the real nature of its petition for
mandamus is an effort to enforce a mandatory venue statute. Mandamus is available for such a
purpose. See In re Cont'l Airlines, 988 S.W.2d 733, 736 (Tex. 1998). (2)

 Dr. Pepper contends that, even if this is an effort to enforce a mandatory venue statute,
mandamus is not available here because the mandatory venue claim does not come within
Chapter 15 of the Texas Civil Practice and Remedies Code. Pepsico argues that the underlying suit
involved here is one for an injunction, for which mandatory venue is prescribed in Texas Civil
Practice and Remedies Code, Section 65.023(a), and so it comes within Chapter 15 by virtue of
Section 15.016 of the Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 15.016 (Vernon 1986).

 We do not reach this question because it is not ripe. For a suit to be governed by Section
65.023(a), it must be a suit in which the relief sought is purely or primarily injunctive. See In re
Cont'l Airlines, 988 S.W.2d at 736; Ex parte Coffee, 160 Tex. 224, 328 S.W.2d 283, 287 (1959). 
The trial court has not ruled on that question in this case, and no party has complained on any action
by the court in that regard. Thus, the only issue we reach is whether the trial court should have
considered the mandatory venue allegations contained in Pepsico's amended motion for change of
venue.

 The trial court found that Pepsico waived its mandatory venue argument by failing to raise
it in its original motion to transfer venue, which was filed contemporaneously with its answer. 
Pepsico contends it invoked Tex. R. Civ. P. 86 in its original motion to transfer venue and later
clarified, in its amended motion to transfer venue, that the basis for its Rule 86 venue challenge was
the mandatory venue statute in Section 65.023(a). In its original motion, Pepsico also objected to
Harrison County as an inconvenient forum under Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b)
(Vernon Supp. 2002).

 Dr. Pepper contends Pepsico's original motion to transfer venue, by merely invoking Rule 86,
was insufficient to put the trial court on notice of its mandatory venue contention. Pepsico responds
that the Texas Rules of Civil Procedure authorize parties to amend their pleadings to plead new
matters not originally pleaded or to remedy deficiencies in their pleadings. See Tex. R. Civ. P. 62,
63. Pepsico also contends that, consistent with this principle, Rule 86(3) contemplates there will be
amendments to venue transfer motions. See Tex. R. Civ. P. 86(3), which provides that, 

 The motion, and any amendments to it, shall state that the action should be
transferred to another specified county of proper venue because: 


 (a) The county where the action is pending is not a proper county;
or 


 (b) Mandatory venue of the action in another county is prescribed
by one or more specific statutory provisions which shall be clearly designated
or indicated.


(Emphasis added.) Such amendments, Pepsico contends, relate back to and supersede the original
motion.

 The parties cite us to several cases they say directly address this issue. In First Heights Bank,
FSB v. Gutierrez, 852 S.W.2d 596, 618 (Tex. App.-Corpus Christi 1993, writ denied), the trial court
overruled the defendant's motion to transfer venue from Cameron County to Orange County. The
motion was not based on mandatory venue. Subsequently, the defendant declared bankruptcy and
was dismissed from the case. The defendant's successor in interest filed a motion to transfer venue
based on mandatory venue in Travis County. The court of appeals held that the successor in interest
was bound by its predecessor's failure to assert mandatory venue.

 Dr. Pepper argues that Gutierrez stands for the proposition that a defendant may not raise
new grounds for transferring venue after the party makes an appearance. We agree with Pepsico,
however, that Gutierrez does not address the situation in this case because the trial court overruled
the defendant's motion to transfer venue before the successor in interest filed its motion to transfer
venue. Under Rule 87(5), the trial court cannot entertain further motions to transfer venue after
ruling on a motion to transfer venue, except when the motion alleges (1) an impartial trial cannot be
had in the county of venue or (2) venue is mandatory in another county, unless the mandatory venue
claim was available to the other movant. Tex. R. Civ. P. 87(5).

 In Canales v. Estate of Canales, 683 S.W.2d 77, 79 (Tex. App.-San Antonio 1984, no writ),
an out-of-state defendant filed a plea of privilege challenging venue, but did not indicate she was a
resident of Dallas County, the county to which she sought transfer. She later filed two amended
pleas of privilege, the second of which alleged that she moved to Dallas County, but that she was
a resident of Washington, D.C., when the suit was filed. In the court of appeals, she contended her
second amended plea of privilege replaced her initial plea of privilege. The court of appeals held
that, because a nonresident defendant has no right to be sued in a particular county, the defendant's
initial plea of privilege was a nullity because she failed to allege she was a resident of any county
in Texas.

 Dr. Pepper contends Canales shows that, when a defendant's timely effort to seek a change
of venue contains a defective ground, the defendant cannot assert a different ground in an amended
pleading. We disagree. Canales is distinguishable because the court of appeals there held that the
defendant's initial plea of privilege was a nullity and not a plea of privilege at all. Thus, there was
no timely-filed plea of privilege to which the defendant's amended pleas of privilege could relate.

 In GeoChem Tech Corp. v. Verseckes, 962 S.W.2d 541, 544 (Tex. 1998), the Texas Supreme
Court held the plaintiff's suit was erroneously transferred from Van Zandt County to Stephens
County because one of the defendants had filed an amended motion to transfer venue asserting
mandatory venue in either Van Zandt or Stephens County. In Marshall v. Mahaffey, 974 S.W.2d
942, 946 (Tex. App.-Beaumont 1998, pet. denied), the court of appeals held the allegations
contained in the defendants' amended motion to transfer venue met the requirement that they
specifically plead mandatory venue.

 Pepsico contends both cases show that courts treat the allegations in amended motions to
transfer venue as relating back to the original motion. In neither of these cases, however, did the
plaintiffs object to the defendants' amended motions. Therefore, the courts in those cases were not
addressing the specific issue raised in this proceeding.

 Under the former plea of privilege practice for challenging venue, courts uniformly held that
an amended plea of privilege could remedy both defects of form or substance in a defective original
plea. Indus. State Bank v. Eng'g Serv. & Equip., Inc., 612 S.W.2d 661, 663 (Tex. Civ. App.-Dallas
1981, no writ); Jones v. Klein, 451 S.W.2d 788, 789 (Tex. Civ. App.-Houston [1st Dist.] 1970, no
writ). The amended plea related back to the time of filing the original plea and superseded it. Indus.
State Bank v. Eng'g Serv. & Equip., Inc., 612 S.W.2d at 663; Retter v. Still, 582 S.W.2d 537, 538
(Tex. Civ. App.-Texarkana 1979, no writ) (unverified plea of privilege could be amended with
properly verified plea before trial court ruled on plea); Cabrera v. Tex. Consumer Fin. Corp., 494
S.W.2d 581, 582 (Tex. Civ. App.-Fort Worth 1973, no writ) (same); see also Fester v. Locke, 285
S.W.2d 239, 240 (Tex. Civ. App.-Fort Worth 1955, no writ) (failure of plea of privilege to contain
necessary allegation could be remedied by amendment).

 Dr. Pepper questions the applicability of these cases because of the differences between plea
of privilege practice and the current rules regarding motions to transfer venue. But the plea of
privilege practice had much in common with the procedure for challenging venue under the current
rules. Under both the former and the current rules, a venue challenge must have been made before
any pleading other than a special appearance is filed. Compare Tex. R. Civ. P. 84 (Vernon 1979,
amended 1983); Canales v. Estate of Canales, 683 S.W.2d at 80, with Tex. R. Civ. P. 86(1). Both
procedures also require the defendant to present the legal and factual bases for the change of venue. 
Compare Tex. R. Civ. P. 86 (Vernon 1979, amended 1983), with Tex. R. Civ. P. 86(3).

 The main differences between a plea of privilege and a motion to transfer venue arise from
the nature of the plea of privilege itself and from the mechanism for challenging it. A plea of
privilege was required to be verified; a motion to transfer need not be verified. Compare Tex. R.
Civ. P. 86 (Vernon 1979, amended 1983), with Tex. R. Civ. P. 86(3). A properly filed plea of
privilege constituted prima facie proof of the defendant's right to a change of venue unless the
plaintiff controverted the plea in a sworn pleading. Tex. R. Civ. P. 86 (Vernon 1979, amended
1983). Under the current rules, the defendant has the burden to prove venue is maintainable in the
county in which venue is sought, but the venue facts pleaded in a motion to transfer venue are taken
as true unless the plaintiff specifically denies them, in which case the defendant must make prima
facie proof by filing supporting affidavits. Tex. R. Civ. P. 87(3)(a).

 In plea of privilege practice, the plaintiff could controvert a plea of privilege by filing a sworn
pleading, Tex. R. Civ. P. 86 (Vernon 1979, amended 1983), but if the plaintiff did not file such a
pleading, the plea of privilege had to be sustained. Eagle Life Ins. Co. v. Owens, 549 S.W.2d 243,
244 (Tex. Civ. App.-Texarkana 1977, writ dism'd). Under current rules, while the plaintiff has the
burden to prove that venue is maintainable in the county of suit, Tex. R. Civ. P. 87(2)(a), the plaintiff
need not respond to a motion to transfer venue at all. Tex. R. Civ. P. 86(4). The venue facts the
plaintiff has pleaded are taken as true unless the defendant specifically denies them, in which case
the plaintiff must make prima facie proof by filing affidavits that fully and specifically set forth the
venue facts the plaintiff has pleaded. Tex. R. Civ. P. 87(3)(a). If the plaintiff makes such prima
facie proof, the suit cannot be transferred except on the grounds that an impartial trial cannot be had
in the county of venue or that mandatory venue lies in another county. Tex. R. Civ. P. 87(3)(c).

 We do not believe these differences between the plea of privilege practice and the current
rules warrant a departure from the cases holding that a plea of privilege could be amended to cure
both formal and substantive defects. See 2 Roy W. McDonald & Elaine A. Grafton Carlson,
Texas Civil Practice § 6.38 (1992). If anything, allowing an amendment to a plea of privilege was
a more serious matter, because the allegations in the amended plea constituted prima facie proof of
the defendant's right to a change of venue. If the plaintiff did not respond to the plea, it had to be
granted. In contrast, under current rules, the defendant has the burden of proof on a motion to
transfer venue.

 GeoChem Tech Corp. v. Verseckes, 962 S.W.2d 541, is not to the contrary on this issue. In
that case, the Texas Supreme Court was called on to decide whether the rule under plea of privilege
practice-that venue was fixed in the county to which transfer was sought when the plaintiff took a
nonsuit after the defendant filed a plea of privilege-applied under current rules. Id. at 542. The
court held that whether a change of venue was warranted must be determined from the record filed
at the time the nonsuit was taken because either or both of the parties may or may not have made
prima facie proof at the time of the nonsuit. Id. at 543. In contrast, a plea of privilege was prima
facie proof of the defendant's right to a change of venue such that the nonsuit was deemed an
admission that venue was improper in the county of suit and that the defendant had the right to a
transfer of venue. Id.

 The Texas Supreme Court's holding in GeoChem Tech Corp. was grounded in the nature of
the plea of privilege itself. Because the plea of privilege was prima facie proof, it justified the
assumption that venue over the refiled suit should lie in the county to which transfer was sought. 
No such assumption could be made in every case in which a nonsuit was taken after a motion to
transfer venue was filed.

 In the present proceeding, the differences between a plea of privilege and a motion to transfer
venue are irrelevant to determining whether an amendment to those pleadings relates back to the
original pleading. As we have already noted, those differences might justify the conclusion that an
amendment to a plea of privilege should not relate back to the original plea. However, such was not
the rule in plea of privilege practice. See Indus. State Bank v. Eng'g Serv. & Equip., Inc., 612
S.W.2d at 663; Retter v. Still, 582 S.W.2d at 538; Cabrera v. Tex. Consumer Fin. Corp., 494 S.W.2d
at 582.

 Dr. Pepper contends that none of the plea of privilege cases Pepsico cites involved an
amended plea of privilege that alleged an entirely new ground for seeking a venue change. Pepsico
characterizes its amended motion to transfer venue as curing a defect in its original motion, which
invoked Rule 86 but did not state the grounds for its Rule 86 motion. In its original motion to
transfer venue, Pepsico did reference Rule 86, which contains the mandatory venue provisions, but
it referenced the rule only generally, and Pepsico specifically referenced only a change of venue as
authorized under the convenience provisions of Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b). 
Nevertheless, Pepsico did reference the mandatory venue rule in its original motion to transfer, and
its failure to specifically address the grounds for mandatory venue was a defect that could be cured
by amendment filed before the trial court ruled on the original motion to transfer. However, whether
Pepsico's motion amends a defect in its original motion or alleges a new ground is immaterial. The
amended motion related back to the original motion, and the trial court must consider the grounds
for a change of venue alleged therein.

 Dr. Pepper contends that such a holding renders the due order of pleading rule embodied in
Rule 86(1) meaningless because it allows a defendant to allege in an amended motion to transfer
venue different grounds than it alleged in its original motion. But this eventuality is tempered in
three ways. First, a motion to transfer venue such as the one here, which invoked Rule 86 without
stating any grounds for transfer under Rule 86, is susceptible to objection for lack of specificity. 
Second, an amended motion to transfer venue cannot operate as a surprise to the opposing party. See
Tex. R. Civ. P. 63. Third, the movant has the burden to request a setting on the motion to transfer
venue, and the trial court must determine the motion promptly, with each party receiving at least
forty-five days' notice of the hearing. Tex. R. Civ. P. 87(1). After the trial court rules on the motion,
it cannot entertain further motions to transfer venue, except when such motions allege (1) that an
impartial trial cannot be had in the county of venue or (2) that venue is mandatory in another county,
unless the mandatory venue claim was available to the first movant. Tex. R. Civ. P. 87(5).

 We hold that an original timely motion to transfer venue may be amended to cure defects in
the original motion if the amended motion is filed before the trial court rules on the original motion,
and that the properly filed amended motion relates back to and supersedes the original motion to
transfer venue.

 For the reasons stated, we find that the trial court abused its discretion in striking Pepsico's
amended motion to transfer venue. The trial court is ordered to reinstate the amended motion and
consider its allegations in determining venue. The writ of mandamus will issue only if the trial court
fails to comply with this order.



 William J. Cornelius*

 Justice


*William J. Cornelius, Chief Justice, Retired, Sitting By Assignment


Date Submitted: October 16, 2002

Date Decided: October 17, 2002


Publish

1. Lombardo is a vice-president at Pepsico.
2. In the case of In re Colonial Cas. Ins. Co., 33 S.W.3d 399 (Tex. App.-Texarkana 2000, orig.
proceeding), we construed Tex. Civ. Prac. & Rem. Code Ann. § 15.0642 (Vernon Supp. 2002) as
not permitting the use of mandamus to enforce the mandatory venue provision of Tex. Lab. Code
Ann. § 410.255(a) (Vernon 1996). That case is distinguishable, however, because there we did not
consider the applicability of Tex. Civ. Prac. & Rem. Code Ann. § 15.016 (Vernon 1986).


-fareast-theme-font:minor-latin;}
p.MsoNoSpacingCxSpFirst, li.MsoNoSpacingCxSpFirst, div.MsoNoSpacingCxSpFirst
 {mso-style-name:"No Spacing\,QuotationCxSpFirst";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoNoSpacingCxSpMiddle, li.MsoNoSpacingCxSpMiddle, div.MsoNoSpacingCxSpMiddle
 {mso-style-name:"No Spacing\,QuotationCxSpMiddle";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoNoSpacingCxSpLast, li.MsoNoSpacingCxSpLast, div.MsoNoSpacingCxSpLast
 {mso-style-name:"No Spacing\,QuotationCxSpLast";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-212-CR%20In%20re%20Brian%20Keith%20Melton%20Mandamus%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00212-CR

                                                ______________________________

 

 

 

                                                                        IN
RE:

BRIAN
KEITH MELTON

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                        Memorandum
Opinion by Chief Justice Morriss

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Brian Keith Meltons original 2001
plea agreement, entered in two cases, called for giving him credit for 258 days
against his sentences.  The problem with
that agreement was that such credit exceeded the maximum amount of credit
legally available in Meltons situation. 
As a result, there have been various efforts initiated by Melton seeking
to solve the problem, including the pro se petition for writ of mandamus now
before this Court in these two cases.[1]

            As part of his corrective efforts,
Melton filed motions for judgment nunc pro tunc with the trial court.  Melton claims the trial court denied the
motions and, as a result, now petitions this Court for mandamus relief.[2]  Because there is nothing in the record before
us establishing that the trial court has ruled on the motions, we deny Meltons
requested relief.[3]

            A trial court shall give a defendant
credit toward the defendants sentence for time he or she spent in jail from
the time of his or her arrest and confinement until the defendant is sentenced
by the trial court.  Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(1), (2) (Vernon
Supp. 2010).  The trial court cannot,
however, give credit for noncustody time. 
Ex parte Hayward, 711 S.W.2d
652, 656 (Tex. Crim. App. 1986); see also
Ex parte Harvey, 846 S.W.2d 328, 329
(Tex. Crim. App. 1993) (jail time credited by trial court may not exceed time
between date of commission of offense and imposition of sentence).  Taking into account the offense and sentence
dates from Meltons judgments, if it is assumed he was arrested immediately, on
the dates of the offenses, he could have served only 162 days in jail for the
January 24, 2001, offense and only 100 days for the March 27, 2001,
offense.  Obviously, this does not
account for any time during which Melton was not in custody so that he could
commit the March 27 offense, but that calculation is not necessary for our
purposes.

            According to Meltons petition,
prison officials would not give him credit for the 258 days as ordered in the
trial courts judgments because that number of credited days would pre-date
both offense dates.  Melton filed an
application for habeas corpus relief, and the Texas Court of Criminal Appeals
ordered the trial court to conduct a hearing and make findings of fact and
conclusions of law.  Ex parte Melton, Nos. 44,431-02, 44,431-03 (Tex. Crim. App. Aug.
14, 2002) (not designated for publication). 
The trial courts resulting findings and conclusions stated that the 258
days of jail credit were part of the plea agreement between the State and
Melton, that the 258 days credit would result in a sentence begin date which
predates the offense date by 157 days,[4] that
Melton was entitled to the additional 157 days of credit, and that nunc pro
tunc judgments should be entered to effectuate the plea agreement and ensure
Melton received the number of days credit promised him in the plea
agreement.  The trial court then entered
a judgment nunc pro tunc for each of Meltons cases, where the trial court
changed Meltons sentences to nineteen years and 200 days, and again credited
Melton with 258 days served.[5]  The Texas Court of Criminal Appeals denied
Meltons applications for habeas relief.

            In June 2010, Melton filed motions
for judgments nunc pro tunc with the
trial court, in which he asked the trial court to order compliance with the
plea agreement and sentence of July 5, 2001. 
In other words, Melton asked the trial court to correct the judgments nunc
pro tunc entered in January 2003 so that the judgments would track the original plea agreement that was
reflected in the original July 5, 2001, judgments.[6]

            Melton has attached several
documents to his petition to this Court, including the original judgments; the
trial courts findings and conclusions; the trial courts judgments nunc pro
tunc, entered in January 2003; and Meltons motions for judgment nunc pro tunc
filed in June 2010.  We have not,
however, been provided with any order from the trial court disposing of Meltons
June 2010 motions for nunc pro tunc relief. 
Melton states in his petition that the district clerk has told Melton
the motions were denied, but we have no evidence of that before us.

            The extraordinary remedy of mandamus
is available only in cases in which (1) the relator has no other adequate
remedy at law, and (2) he or she seeks to compel a ministerial act.[7]  Collier
v. Poe, 732 S.W.2d 332, 345 (Tex. Crim. App. 1987); Dickens, 727 S.W.2d at 550; Holmes
v. Kolenda, 756 S.W.2d 39, 40 (Tex. 
App.Houston [1st Dist.] 1988, orig. proceeding).  It is a relators burden to establish his or
her entitlement to mandamus relief.  Dickens, 727 S.W.2d at 548.  It is the relators burden to provide this
Court with a sufficient record to establish his or her right to mandamus
relief.  Walker v. Packer, 827
S.W.2d 833, 837 (Tex. 1992); In re Pilgrims Pride Corp., 187 S.W.3d
197, 19899 (Tex. App.Texarkana 2006, orig. proceeding); see Tex. R. App. P.
52.3.

            Because the record before us does
not establish that Melton has shown himself entitled to mandamus relief,[8]
we deny his petition for writ of mandamus.

            Melton also seeks to have this Court
deem his pleas of guilty involuntary,[9]
as the excess time credited in the plea agreement and judgments renders the
plea agreement unenforceable; to withdraw Meltons pleas; or, in the
alternative, to transfer this petition for writ of mandamus to the Texas Court
of Criminal Appeals.  These are not
proper subjects of mandamus relief, and this Court lacks jurisdiction to grant
any of the requested relief.

            We deny the petition.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          December 1, 2010       

Date
Decided:             December 2, 2010

 

Do Not
Publish

 

 











[1]Meltons
plea agreement was entered July 5, 2001, in trial court cause numbers 20,570
and 20,572, in each of which he was charged with burglary of a habitation,
based on offenses committed January 24, 2001, and March 27, 2001, respectively.  Under the plea agreement, Melton would be
sentenced to twenty years incarceration in each case and receive credit for
258 days.  This agreement on credit against
his sentences, however, was not honored by the Texas Department of Criminal
JusticeInstitutional
Division.  That started this series of
efforts.

 





[2]Melton
is correct in that, if the trial court in fact did or does deny his motion for
judgment nunc pro tunc, mandamus is the appropriate next step.  Ex
parte Florence, 319 S.W.3d 695 (Tex. Crim. App. 2010); Ex parte Ybarra, 149 S.W.3d 147, 14849 (Tex. Crim. App. 2004).

 





[3]Melton
was convicted in trial court cause numbers 20,570 and 20,572; he filed a
distinct motion for judgment nunc pro tunc in each of the cases, but has filed
a single petition for writ of mandamus. 
The issues and arguments in the two trial causes are identical, so the
single petition for mandamus relief is appropriate. 





[4]The
trial court issued one set of findings and conclusions, bearing the two cause
numbers of Meltons two cases.  The trial
court did not distinguish or take into consideration the separate March offense
date for Meltons second case. 





[5]Regardless
of whether these acts by the trial court were erroneous, see Ex parte Dopps, 723
S.W.2d 669, 671 (Tex. Crim. App. 1986); Wilson
v. State, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984), those judgments are
not before us.

 





[6]Melton
also complains that fines were assessed in the judgments, in spite of the plea
agreement that no fine was to be assessed in either case.  We point out the imposition of $249.25 on
each case represents court costs, not fines.

 





[7]When
the Texas Court of Criminal Appeals reviews a court of appeals mandamus
ruling, it can also consider whether the court of appeals clearly abused its
discretion.  Dickens v. Second Court of Appeals, 727 S.W.2d 542, 550 (Tex. Crim.
App. 1987).

 





[8]Although
Melton states in his petition that he complied with Section 501.0081 of the
Texas Government Code, there is nothing in the record before us confirming such
compliance.  Tex. Govt Code Ann. §
501.0081 (Vernon 2004).  

 





[9]It
does not appear Melton pursued a direct appeal of his convictions.